ELIZABETH BLOW; PETER G. BOUGADES; MOLLIE L. BROWN; STEPHEN J.
CHENEY; MARGARET CHENEY; THELMA A. CHURCHILL; HERMAN O.
CLARK; PAUL COWGILL; ROBERT A. COX; JESSE B. DAVIS; R. EARL
DAVIS, Custodian for CHRISTY M. DAVIS and MARK DAVIS, Minors;
GEORGE W. DUFFIELD; CAROLYN DUFFIELD; PAUL FAIRBETTER;
ALMA FARAH; ALBERT FARAH; ALINE W. FLEMING; MOLLY GLAND-
ER; KENNETH GLANDER; ROBERT HASSELL; MARK L. HITCHCOCK;
DIANE HORNE; E. LEE HORNE, JR.; GAYLE B. HORTON; WILLIAM
JACKSON, Custodian for DANIEL E. JACKSON and SCOTT JACKSON,
Minors; GLEN V. JOHNSON; JERRY J. JOHNSON; BARNEY JOYNER;
PHYLLIS JOYNER; W. M. KIRVEN; JAMES W. KNIGHT; TERRY R.
KNIGHT; JAMES W. KNIGHT, Custodian for MARIE LYNN KNIGHT and
KELLY RENEE KNIGHT, Minors; RUSSELL LaVIOLETTE; DANIEL C.
MARKS; HANS G. MICHEL; NELL J. MINSHEW, Custodian for MARY
ELIZABETH MINSHEW and TERESA LEMAN MINSHEW, Minors; JOHN
H. MITCHELL; MARJORIE MOORE; CARLOS W. MURRAY, JR.; ELLIS
NASSIF; ELIZABETH NASSIF; WILLIAM J. O'DONNELL; THOMPSON G.
PACE, III; JANE F. RABIL; LEROY REGISTER; ELIZABETH P. TAYLOR;
JOHN O. TOBLER; CHERYL UPHAM; MARJORY K. UPHAM; and JAMES
B. UPHAM v. JEFFREY JOHN SHAUGHNESSY; WHEAT, FIRST
SECURITIES, INC.; W. LARRY OWNLEY; LEE FOLGER, III; MERRILL,
LYNCH, PIERCE, FENNER & SMITH INCORPORATED; RONALD
GROVE; BACHE HALSEY STUART SHIELDS INCORPORATED; ROBERT
WALTERMAN; and MAUREEN BERRY

No. 8710SC153

(Filed 2 February 1988)

1. **Appeal and Error § 50; Torts § 4— aiding and abetting breach of fiduciary ob-
ligations—definition of substantial assistance—no error**

   In a civil action for aiding and abetting breach of fiduciary obligations
arising from securities fraud, the trial court's supplemental instruction on the
definition of substantial assistance embodied all the principles necessary to
convey an appropriate definition of substantial assistance and therefore the
supplemental instruction, taken as a whole, did not mislead or misinform the
jury; moreover, plaintiffs' request for special jury instruction gave practically
the same legal definition of the issues in the case and any misconception of the
issue by the jury was conceivably cured by an exchange between the foreman
and the judge.

2. **Rules of Civil Procedure § 59— breach of fiduciary obligation—motion for new
trial on issue of damages—denied**

   The trial court did not abuse its discretion in an action for breach of
fiduciary obligation arising from securities fraud by denying plaintiffs' motion
for a new trial on the issue of damages where there was no stipulation of
damages and the jury weighed the evidence before it and arrived at a figure.
N.C.G.S. § 1A-1, Rule 59.

APPEAL by plaintiffs from *Hobgood, Hamilton H., Judge.* Judgment entered 27 November 1985 in Superior Court, WAKE County. Heard in the Court of Appeals 22 September 1987.

This is the second appeal of this case to this Court. In the first appeal, this Court held that the trial court did not err in denying defendants' motion to stay proceedings in trial court pending arbitration of the matters raised in plaintiffs' complaint. *See, Blow, et al. v. Shaughnessy, et al.,* 68 N.C. App. 1, 313 S.E. 2d 868, *disc. rev. denied,* 311 N.C. 751, 321 S.E. 2d 127 (1984).

This appeal is by plaintiff appellants from a jury verdict in favor of Wheat, First Securities, Inc., Larry Ownley and Lee Folger (the Wheat defendant appellees) and against defendant Jeffrey John Shaughnessy.[1] The essential facts of this case are as follows: Beginning in 1979, plaintiffs purchased a number of "units" in Capital City Investments (hereinafter CCI). CCI was organized in 1979 by defendant Shaughnessy who sold the "units" to plaintiffs. He was a registered investment advisor and had extensive experience as a stock broker before starting CCI. All of the plaintiffs signed a limited partnership agreement in which plaintiffs were all limited partners in CCI and Shaughnessy was to be the sole general partner. Pursuant to the limited partnership agreement, Shaughnessy had exclusive responsibility and authority to invest fund assets. Units were sold initially for $100 each and thereafter the purchase price of each unit was to be determined by dividing market value of CCI holdings by the number of units then outstanding. Shaughnessy's duty was to invest the assets of CCI in the stock market. Initially, Shaughnessy opened brokerage accounts for CCI at Merrill Lynch and at Bache in August 1979. In November of 1979, defendant Shaughnessy lost 80% of the funds' equity in highly speculative commodity trading that was contrary to the trading strategy represented by defendant Shaughnessy to the CCI investors. Shaughnessy personally informed the investors of the losses and assured them that he would not resort to high risk trading strategies in the future.

---

1. Bache Halsey Stuart Shields, Inc., Robert Walterman and Maureen Berry (the Bache defendants), and Merrill, Lynch, Pierce, Fenner & Smith, Inc. and Ronald Grove (the Merrill Lynch defendants) were also named as defendants when the case was filed. Plaintiffs settled their claims against the Bache and Merrill Lynch defendants prior to trial.

Defendant Shaughnessy then initiated a telephone recording serv-ice and issued quarterly reports to allow the investors to keep up with their investments.

Beginning in December and continuing until March 1982, new investors bought units in CCI. Shaughnessy did not inform the new investors of the losses that CCI had suffered in the fall of 1979, and also did not tell them that the original unit value in CCI had been $100 per unit. Shaughnessy led investors to believe that the original unit value had been $25 per unit.

The weekly telephone reports of unit value and the quarterly reports by Shaughnessy indicated to investors that there was a rise in the unit value from January 1980 through September 1981. However, the actual value of the units was fluctuating and Shaughnessy began to falsify the reports of the unit value sometime in 1980. For example, on 23 May 1980, Shaughnessy reported a unit value of $44.22, when the actual unit value was $29.75. On 8 August 1980, Shaughnessy reported a unit value of $50.24 when the actual unit value was $33.22. On 14 November 1980, Shaughnessy reported a unit value of $53.74, when the ac-tual unit value was $33.98.

In March 1981, defendant Shaughnessy opened an account for CCI at Wheat First Securities Incorporated (hereinafter Wheat). Defendants Ownley and Folger along with Tom Dorsey had met earlier with defendant Shaughnessy to discuss opening an account at Wheat. Shaughnessy opened the account at Wheat primarily to have access to technical information about options trading that was not available from Bache or Merrill Lynch. Shaughnessy hoped that this additional technical data might allow him to recover some of the substantial losses he had sustained in his CCI account at Bache and Merrill Lynch in the first quarter of 1981.

During the late summer of 1981, Shaughnessy invested in Boeing Corporation in options at all three brokerage firms. The Boeing investment was a highly speculative investment attempt "to hit a home run" to recoup some of the CCI losses. This invest-ment resulted in a "home run" in which Shaughnessy made ap-proximately $300,000 for CCI on that one stock. Defendant Shaughnessy testified that at this point he had not informed any of his CCI brokers of his false reporting of unit values.

In early October 1981, defendant Ownley contacted defendant Shaughnessy by telephone regarding Bridge Data activity in the stock of Dean Witter. Defendant Shaughnessy declined to make a Dean Witter trade based upon Bridge Data recommendations by defendant Ownley. Several days later the Dean Witter stock was bought out by Sears with the price of the stock rising approximately 100% in less than a week.

On 13 October 1981, defendant Ownley then contacted defendant Shaughnessy with information and recommendations based upon Bridge Data to buy Pennzoil. Shaughnessy eventually invested in Pennzoil under the belief that Pennzoil might be a take-over candidate. He hoped to make substantial profits in a very short time as he did in the Boeing scenario several months before. However, Pennzoil was not the subject of a buyout as hoped for by Shaughnessy, and Shaughnessy sold the Pennzoil holdings at Wheat the next day for a total loss of $18,142.86.

On 16 October 1981, defendant closed out his Pennzoil position at Merrill Lynch and Bache for a total combined loss to the CCI account on all Pennzoil trades of $101,378.06.

Shaughnessy decided not to report the Pennzoil losses to his CCI investors. He reported a unit value for the week ending 16 October 1981 as $73.46 when the actual unit value was $26.64.

Shaughnessy testified that he told Larry Ownley on 16 October 1981, that he (Shaughnessy) did not intend to report the losses to investors and that he intended to report a false unit value. Defendant Ownley testified that defendant Shaughnessy did not inform him of his decision to conceal the Pennzoil losses from CCI investors, that Shaughnessy did not inform him of the total loss of over $100,000 on the Pennzoil trade and further that he had no knowledge of any wrongdoing related to the CCI fund until 8 April 1982. Subsequent to the Pennzoil losses, defendant Shaughnessy engaged in a series of trades resulting in a loss of over $440,000 by CCI funds, such losses occurring in a six month period between 16 October 1981 and 8 April 1982. Of this amount, $166,590.22 was lost on the CCI account at Wheat. As of 9 April 1982, the actual value of the CCI account was $28,595.01.

Shaughnessy also testified that he first informed defendant Folger of his falsification of unit values in February 1982.

Shaughnessy testified that he told Folger at a dinner meeting in mid-February that he (Shaughnessy) was in trouble with certain investments and that he had been falsifying reports of unit value in CCI.

Defendant Folger testified that defendant Shaughnessy never told him anything to indicate Shaughnessy was giving false information to investors. He denied knowing about the falsifications of value any time prior to 9 April 1982.

On 8 April 1982, Shaughnessy received a telephone call from the Securities Exchange Commission (hereinafter SEC) regarding a routine audit. Defendant Ownley visited Shaughnessy's home and learned for the first time the CCI funds money was lost and that defendant Shaughnessy had been falsifying reports of unit values to investors. Defendant Shaughnessy also called defendant Folger and met with defendant Folger the next morning concerning the activities of Shaughnessy. Shaughnessy consulted an attorney and began calling investors to inform them that the funds of CCI had been lost. Shaughnessy was deposed by the SEC on 19 April 1982.

In his testimony before the SEC, Shaughnessy intentionally focused attention on the Pennzoil losses and trading activity. Subsequent thereto, he told the SEC that all his reports to investors had been accurate prior to 19 October 1981. The SEC obtained a permanent injunction on 29 April 1982. The remaining funds of CCI were placed with a conservator.

On 25 November 1985, the case was submitted to the jury on the issues of fraud (Shaughnessy and Wheat defendants); conspiracy to defraud (Shaughnessy and Wheat defendants); breach of fiduciary duties (Shaughnessy) and aiding and abetting breach of fiduciary duties (Wheat defendants).

On 27 November 1985, the jury returned a verdict, finding that Shaughnessy had defrauded and breached his fiduciary duty to plaintiffs and awarded plaintiffs $124,942 in damages against Shaughnessy and finding no liability as to any Wheat defendants.

Plaintiffs moved for a new trial against defendant Shaughnessy on the issue of damages and a new trial against the Wheat defendants on the issue of aiding and abetting breach of fiduciary

duty. Plaintiffs' motions were denied and judgment was entered on 27 November 1985. Plaintiffs appeal.

*Harrell & Wright, by Bernard A. Harrell and I. Clark Wright, Jr., for plaintiff appellants.*

*Hunton & Williams, by David Dreifus and James E. Farnham, for defendant appellees Wheat First Securities, Inc., W. Larry Ownley and Lee Folger, III.*

*No brief filed by defendant Jeffrey John Shaughnessy.*

JOHNSON, Judge.

[1]  Plaintiffs contend that the trial court erred in giving a supplemental jury instruction on the definition of "substantial assistance." We find plaintiffs' contention is without merit.

Plaintiffs object to the following language given by the Court:

> Substantial assistance is defined as a large amount or quantity of assistance as distinguished from nominal or routine assistance. Assistance may be said to be substantial when it was a significant factor *in bringing about* the violation complained of, that is, the false reporting of unit values. In the present case, in order for you to find that Ownley or Folger knowingly rendered substantial assistance to Shaughnessy in his reporting of false unit values to investors, you *must* find that plaintiffs have proven by the greater weight of the evidence that Ownley *and* Folger's conduct was a significant factor *in causing* Shaughnessy *to report false unit values* to investors. (Emphasis added based on plaintiffs' brief.)

First, we recognize that a cause of action for aiding and abetting in breach of fiduciary obligations has heretofore never been addressed by this Court. However, a cause of action on this theory has been recognized by federal courts in securities fraud cases based on violations of section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. sec. 78) and Rule 10b-5 (17 C.F.R. sec. 240 -10b-5). *See, Metge v. Baehler,* 762 F.2d 621 (8th Cir. 1985); *Gilbert v. Bagley,* 492 F. Supp. 714 (M.D.N.C. 1980); *Mendelsohn v. Capital Underwriters, Inc.,* 490 F. Supp. 1069 (N.D. Cal. 1979); *Landy v. Federal Deposit Insurance Corporation,* 486

F. 2d 139 (3d Cir. 1973), *cert. denied,* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed. 2d 312 (1974); *See also,* Comment, The Recognition of Aiding and Abetting in the Federal Securities Laws, 23 Hous. L. Rev. 821 (1986).

Although there have been interpretive variations from circuit to circuit, federal courts have recognized three prerequisites necessary to establish aiding and abetting liability. These requirements include:

(1) the existence of a securities law violation by the primary party;

(2) knowledge of the violation on the part of the aider and abettor; and

(3) substantial assistance by the aider and abettor in the achievement of the primary violation. *See, Metge, supra; Gilbert, supra.* The first two elements of the test are not in dispute. It is the court's supplemental instruction in regard to the third element of this theory that plaintiffs contend is erroneous.

In analyzing this question, it is helpful to examine common law concepts of civil liability for aiding and abetting and the guidance of federal court decisions in reference to an appropriate definition of the term "substantial assistance."

Under subsection (b), section 876, Restatement of Torts 2d, a person is liable for harm resulting to a third person if he:

> knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, . . .

The official comment to clause (b) defines "substantial assistance" as follows:

> If the encouragement or assistance is a substantial factor in causing the resulting tort, the one giving it is himself a tortfeasor and is responsible for the consequences of the other's act.

A number of federal courts have adopted this Restatement position for guidance of principles of a cause of action under the theory of aiding and abetting breach of fiduciary duty. Further-

more, our Supreme Court, in *Boykins v. Bennett,* 253 N.C. 725, 118 S.E. 2d 12 (1961), approved the Restatement of Torts 2d sec. 876 position involving the negligence of joint tortfeasors.

Federal courts have construed the "substantial assistance" requirement of aiding and abetting as a causation requirement. They have recognized that the standard of substantial assistance requires a showing of "substantial causal connection between the culpable conduct of the alleged aider and abettor and the harm to the plaintiff, [citation omitted] or a showing that the encouragement or assistance is a substantial factor in causing the resulting tort." (Citation omitted.) *Metge,* 762 F.2d at 624. A body of case law has even developed holding that a party may be liable as an aider and abettor for silence and inaction. *See, Woodward v. Metro Bank of Dallas,* 522 F.2d 84 (5th Cir. 1975).

> "[M]ost [courts] seem to agree that, if the aider and abettor owes the plaintiff an independent duty to act or to disclose, inaction can be a proper basis for liability under the substantial assistance test. . . . [However], in *Monsen v. Consolidated Dressed Beef Co., Inc.,* 579 F.2d 793 (3d Cir. 1978), *cert. denied,* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed. 2d 323 (1979), the Third Circuit evaluated the substantial assistance requirement in a case of inaction and concluded that inaction 'may provide a predicate for liability where the plaintiff demonstrates that the aider-abettor *consciously* intended to assist in the perpetration of the wrongful act.'" *Metge,* 762 F.2d at 625.

Bearing these principles in mind, to determine whether the supplemental instruction on substantial assistance was erroneous, the standard of review requires that:

> The charge of the trial court will be read contextually, and an excerpt from the charge will not be held prejudicial even though it is erroneous when considered out of context, if the charge when considered as a whole presents the law of the case to the jury in such manner as to leave no reasonable cause to believe that the jury was misled or misinformed.

Strong's N.C. Index 3d, Appeal and Error, sec. 50, *citing Gregory v. Lynch,* 271 N.C. 198, 155 S.E. 2d 488 (1967); *In re Will of Jones,*

267 N.C. 48, 147 S.E. 2d 607 (1966); *Steward v. Gallimore*, 265 N.C. 696, 144 S.E. 2d 862 (1965).

Plaintiffs object to an excerpt of the supplemental instruction, which taken as a whole covers five transcript pages. The remaining portions of the supplemental charge on substantial assistance quotes almost verbatim the Restatement of Torts 2d section on the definition of substantial assistance and quotes the theory on silence and inaction recognized in securities fraud cases involving substantial assistance. Plaintiffs argue that if the jury determined that defendants Ownley and Folger acquired actual knowledge that defendant Shaughnessy was defrauding plaintiffs, then the continued execution of trades and market information to defendant Shaughnessy by the Wheat defendants would constitute actions rising to the level of substantial assistance necessary to find liability on the Wheat defendants. Plaintiffs contend that the supplemental instruction prevented the jury from considering this theory. We perceive no error in that portion of the charge quoted to which plaintiffs excepted when considered as a whole.

Plaintiffs' tenth request for special jury instructions which the trial court read as part of the supplemental instruction on substantial assistance gives practically the same legal definition of the issues in the case. A party may not complain of an asserted error in the charge when the [alleged] erroneous instruction is embodied in his own prayer for instructions. *King v. Higgins*, 272 N.C. 267, 158 S.E. 2d 67 (1967). The definition given by the trial court was in accord with the definition of substantial assistance approved in securities fraud cases in federal court.

Furthermore, after the supplemental charge was read to the jury, the foreman asked for clarification on the substantial assistance charge. The following colloquy took place:

THE COURT: Members of the Jury, the Court has explained those two terms ["fiduciary" and "substantial assistance"] to you with some detailed explanation as best it can under the circumstances. You may retire and resume your deliberations.

THE FOREPERSON: Before we go in, I know when we go in there there is still going to be the same problem. Can I ask you a direct question which is—

THE COURT: I may not answer it, but you may certainly ask it.

THE FOREPERSON: Okay. On that question, [dealing with substantial assistance] can it be found that one or all of the defendants broke their fiduciary duty without knowing about the fraud.

THE COURT: You'd have to know about the fraud. Does that answer your question?

THE FOREPERSON: Yes.

THE COURT: You have to knowingly do it. All right. Any further questions?

THE FOREPERSON: Uh-uh.

THE COURT: All right. Resume your deliberating.

Thus, any misconception of the issue by the jury was conceivably cured by the exchange between the foreman and the judge. The inclusion in the instruction of the definition of substantial assistance that was practically identical to the Restatement of Torts 2d sec. 876, the embodiment of the theory on silence and inaction, coupled with the colloquy between the judge and the foreman, appears to us to be sufficient to overcome any conceivable error in the alleged erroneous excerpt plaintiffs complain of on the definition of substantial assistance. The supplemental instruction embodied all the principles necessary to convey an appropriate definition of substantial assistance. Therefore, the supplemental instruction given by the court, taken as a whole, did not mislead or misinform the jury in its understanding of the issues before it. Accordingly, the supplemental instruction was not erroneous and plaintiffs are not entitled to a new trial.

[2] Next, plaintiffs assign as error the trial court's denial of plaintiffs' motion for a new trial, pursuant to G.S. 1A-1, Rule 59, on the issue of damages. Plaintiffs contend that the jury award of $124,942.00 for damages against defendant Shaughnessy was grossly inadequate since the evidence tended to show that the loss suffered by the individual plaintiffs was shown to be not less than $442,952.18. We find this contention is without merit.

A motion for a new trial on the grounds of inadequate damages is addressed to the sound discretion of the trial judge. *Gwaltney v. Keaton*, 29 N.C. App. 91, 223 S.E. 2d 506 (1976). The

Blow v. Shaughnessy

court's decision on a motion for a new trial under G.S. 1A-1, Rule 59, is not reviewable on appeal, absent manifest abuse of discretion. *Mumford v. Hutton & Bourbonnais Co.*, 47 N.C. App. 440, 267 S.E. 2d 511 (1980).

Our Supreme Court, in *Worthington v. Bynum*, 305 N.C. 478, 487, 290 S.E. 2d 599, 605 (1982), explained an appellate court's role in reviewing the discretionary power of a trial court to grant a new trial when it held:

> an appellate court should not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice.

Furthermore, where there is no stipulation of damages, the testimony of witnesses becomes evidence for the sole province of the jury to consider. *Smith v. Beasley*, 298 N.C. 798, 259 S.E. 2d 907 (1979). Thus, "[i]n weighing the credibility of the testimony, the jury has the right to believe any part or none of it." *Id.* at 801, 259 S.E. 2d at 909.

In the case *sub judice*, there was no stipulation of damages made by either party. The jury weighed the evidence before it on the issue of damages, and arrived at a figure, in its view, to be appropriate. Consequently, in the trial judge's discretion, such an award of damages by the jury did not require granting plaintiffs' motion for a new trial. Therefore, upon thorough review of the record, we hold that the trial judge's denial of plaintiffs' motion for a new trial on the issue of damages did not amount to a substantial miscarriage of justice and was therefore not a manifest abuse of discretion.

For all the foregoing reasons, we find

No error.

Judges BECTON and PARKER concur.