SUSAN G. PEAKE, Plaintiff/Appellee v. BEVERLY D. SHIRLEY, Defendant/Appellant

No. 9224SC336

(Filed 6 April 1993)

**Husband and Wife § 52 (NCI4th)— alienation of affections — sufficiency of evidence**

The trial court did not err by denying defendant's motions for directed verdict and judgment n.o.v. in an alienation of affections case where plaintiff indicated that, prior to 1988, her husband had genuine love and affection for her and that she thought they had a perfect marriage; although defendant presented evidence that plaintiff's marriage was troubled by alcohol, this evidence merely created an issue of material fact as to whether genuine love and affection existed between plaintiff and her husband; it was uncontroverted that the love and affection, if it existed, was alienated; plaintiff presented evidence that defendant came to plaintiff's house to see her husband when she knew plaintiff would not be home; defendant made hotel reservations and spent over four hours in a hotel room with plaintiff's husband; and when confronted, defendant admitted her wrong and said "I am so sorry I have done this

to you." Viewing this evidence in the light most favorable to the plaintiff, a jury could reasonably conclude that defendant actively participated in alienating plaintiff's husband's affections and that her conduct led plaintiff's spouse to terminate the marriage.

**Am Jur 2d, Husband and Wife § 501.**

Appeal by defendant from judgment entered 19 December 1991 in Mitchell County Superior Court by Judge Claude S. Sitton. Heard in the Court of Appeals 9 March 1993.

Plaintiff instituted this action against defendant for alienation of her husband's affections. The record reveals the following facts and circumstances leading up to this action. Plaintiff and Dr. Dean Peake were married in 1967 and lived together until 18 February 1989, at which time Dr. Peake left the marital home. Plaintiff and Dr. Peake obtained a divorce on 30 April 1990.

During their marriage, Dr. Peake was regularly employed as a dentist, and plaintiff worked in his office as a receptionist and office manager. Plaintiff presented evidence that prior to their separation, plaintiff and Dr. Peake had a happy marriage. They went on vacations, weekend football outings, and beach trips together and regularly engaged in marital relations. Plaintiff felt that they had a good relationship and a fulfilling marriage.

Plaintiff began noticing changes in her relationship with her husband beginning the summer of 1988. Although it was his habit to eat lunch at his office, Dr. Peake began leaving the office during lunch time, saying he had to get out and ride around. Plaintiff noticed other changes in his behavior as well. Dr. Peake began drinking at defendant's father's home after work and was often not home nights and Saturdays.

On one occasion, plaintiff, Dr. Peake, defendant, and her husband were at the hospital visiting defendant's father. Dr. Peake and defendant left the hospital room together and were away about 10 minutes. When they returned, Dr. Peake said he was going to take everyone out to dinner. Defendant's husband, however, did not want to go. Dr. Peake then refused to take plaintiff to dinner alone. Plaintiff then inquired why Dr. Peake would go out to eat only if defendant was going. Dr. Peake replied that defendant had class but the plaintiff did not.

PEAKE v. SHIRLEY

[109 N.C. App. 591 (1993)]

That same month, on a Thursday night, plaintiff was scheduled to go to a dance class. Instead, she stayed home because she was ill. During the time plaintiff would have been in class, defendant came to plaintiff's home. Defendant and Dr. Peake went downstairs to the den. Dr. Peake asked plaintiff to leave them alone. Around ten o'clock p.m., almost two hours later, Dr. Peake left home and stated that he was going to check on defendant's father. Defendant left shortly thereafter. Dr. Peake did not return home until 1:00 a.m.

Although plaintiff had never invited defendant to her home and had no knowledge that the defendant had ever been in her home on any prior occasions, defendant knew where the bathroom was in plaintiff's home. Further, a witness testified that she had seen the defendant leaving the plaintiff's residence around noon on 22 August 1988, while plaintiff was out of town.

On 11 February 1989, plaintiff and Dr. Peake attended a dance where the defendant was present. Dr. Peake and the defendant danced together numerous times and plaintiff was left sitting alone at a table.

Subsequent to their separation, plaintiff hired a private investigator to follow and observe Dr. Peake. On 4 May 1989, the investigator, his associate, and plaintiff observed Dr. Peake leave his office at approximately 3:30 p.m. He drove through a subdivision and took numerous detours but eventually left on the highway toward Asheville, North Carolina. He proceeded to a Red Roof Inn, circled the motel, parked the car, and entered through a breezeway leading to the motel rooms. Plaintiff and the investigators also observed defendant's car in the parking lot. Dr. Peake arrived at the motel at approximately 6:00 p.m.

At 10:00 p.m., plaintiff and the investigators observed Dr. Peake and the defendant leave the breezeway and proceed to defendant's automobile where they embraced and kissed and defendant got into her automobile. Plaintiff then approached defendant's automobile by the passenger door. Dr. Peake ran and plaintiff got into the car with defendant. Defendant then said to plaintiff, "Please forgive me. I am so sorry I have done this to you."

Defendant presented evidence to the effect that plaintiff and Dr. Peake had a difficult marriage which ended by a dispute over the discipline of their daughter. Plaintiff and Dr. Peake also had a continuing dispute during their marriage over plaintiff's relation-

ship with a Bud Phillips. Defendant further asserted that Dr. Peake abused alcohol throughout the marriage, as plaintiff indicated in her complaint for alimony.

A jury trial was held on 8 December 1991, and upon submission of the issues to the jury, a verdict was returned in favor of the plaintiff, awarding the plaintiff $5,000.00 for alienation of affections. Defendant appeals.

*Lloyd Hise, Jr., P.A., by Lloyd Hise, Jr., for plaintiff-appellee.*

*Robert E. Riddle, P.A., by Robert E. Riddle, for defendant-appellant.*

WELLS, Judge.

Although defendant presents four assignments of error for our review, the dispositive issue before us is whether the trial court erred in denying defendant's motions for directed verdict and judgment notwithstanding the verdict on plaintiff's alienation of affections claim. We find no error.

To withstand a motion for directed verdict on an alienation of affections claim, plaintiff must present evidence to show that: (1) there was genuine love and affection between plaintiff and her husband, and (2) because of the wrongful conduct of defendant, the love and affection was in fact destroyed. *Shaw v. Stringer*, 101 N.C. App. 513, 400 S.E.2d 101 (1991). Plaintiff must also show active and affirmative conduct on the part of defendant. One is not liable for merely becoming the object of the affections that are alienated from a spouse. There must be active participation, initiative or encouragement on the part of the defendant in causing one spouse's loss of the other spouse's affections for liability to arise. *Darnell v. Rupplin*, 91 N.C. App. 349, 371 S.E.2d 743 (1988). We find plaintiff presented sufficient evidence to overcome defendant's directed verdict motion and take the case to the jury.

Plaintiff indicated that prior to 1988, Dr. Peake had genuine love and affection for her. Plaintiff testified that she thought they had a perfect marriage. Although defendant presented evidence that plaintiff's marriage was troubled by alcohol, this evidence merely created an issue of material fact as to whether genuine love and affection existed between plaintiff and her husband. Whether Dr. Peake and plaintiff had an affectionate marriage was not a question for the court but for the jury.

It is uncontroverted that the love and affection, if it existed, was alienated. The question then becomes whether plaintiff presented sufficient evidence that the wrongful acts of defendant produced the alienation of affections. *Gray v. Hoover*, 94 N.C. App. 724, 381 S.E.2d 472 (1989). We find that she did.

Plaintiff presented evidence that defendant came to plaintiff's house to see Dr. Peake when she knew plaintiff would not be home. Defendant also made the hotel reservations at the Red Roof Inn, where she spent over four hours in a hotel room with him. When defendant was confronted, she admitted her wrong, and said, "I am so sorry I have done this to you." Viewing this evidence in the light most favorable to the plaintiff, a jury could reasonably conclude that defendant actively participated in alienating Dr. Peake's affections and that her conduct led plaintiff's spouse to terminate the marriage.

For the reasons stated above and in keeping with prior case law, we hold that the trial court did not err in denying defendant's motions for directed verdict and judgment notwithstanding the verdict.

No error.

Judges ORR and MARTIN concur.