DOROTHY ROWEN HUTELMYER, Plaintiff v. MARGIE B. COX, Defendant

No. COA98-624

(Filed 1 June 1999)

1. **Alienation of Affections— sufficiency of evidence—directed verdict**

Plaintiff presented sufficient evidence to overcome defendant's motions for directed verdict and j.n.o.v. and the trial court properly submitted plaintiff's claim for alienation of affections to the jury where, taken in the light most favorable to plaintiff, the evidence tended to show that plaintiff and Mr. Hutelmyer had "a fairy tale marriage" prior to 1993 and that the love and affection that once existed between the plaintiff and her husband was alienated and destroyed by defendant's conduct.

2. **Alienation of Affections— punitive damages—sufficiency of evidence**

Plaintiff presented sufficient additional circumstances of aggravation to warrant submission of punitive damages to the jury on a claim for alienation of affections where evidence that plaintiff's marriage deteriorated due to defendant's ongoing adulterous relationship with plaintiff's husband was sufficient to submit the issue of alienation of affections and additional evidence tended to show that defendant publicly displayed the intimate nature of the relationship with plaintiff's husband, welcomed plaintiff's husband into her home at all hours of the day and night despite her knowledge of the harm that their relationship would cause his wife and young children, traveled with Mr. Hutelmyer on business trips, and called plaintiff's home on Thanksgiving Day to discover his whereabouts.

3. **Criminal Conversation— punitive damages—evidence sufficient**

The trial court did not err by submitting to the jury the issue of punitive damages on a criminal conversation claim where the evidence was conclusive that defendant engaged in a sexual rela-

HUTELMYER v. COX

[133 N.C. App. 364 (1999)]

tionship with plaintiff's husband for several years during the course of plaintiff's marriage. That evidence, as well as evidence of additional circumstances of aggravation, provided overwhelming support for an award of punitive damages.

**4. Alienation of Affections; Criminal Conversation— compensatory damages—sufficiency of evidence**

Plaintiff presented sufficient evidence to support a $500,000 award of compensatory damages for alienation of affections and criminal conversation where, in addition to evidence showing a loss of income, life insurance and pension benefits resulting from the actions of defendant, there was plenary evidence that plaintiff likewise suffered loss of consortium, mental anguish, humiliation, and injury to health.

**5. Alienation of Affections; Criminal Conversation— punitive damages—amount of award**

The trial court did not abuse its discretion by upholding a jury's award of $500,000 in punitive damages in an action for alienation of affections and criminal conversation. Plaintiff presented sufficient evidence to show her entitlement to punitive damages and there was evidence before the jury concerning the reprehensibility of defendant's motives and conduct, the likelihood of serious harm, defendant's awareness of the probable consequences of her conduct, the duration of the conduct, and the actual damages. The jury awarded $500,000 in compensatory damages and the maximum amount of punitive damages was therefore $1,500,000; it cannot be said that the amount of punitive damages was excessive as a matter of law. The question of whether the court properly instructed the jury with regard to subdivisions (1) and (2) of N.C.G.S. § 1D-35 was not presented for review, but trial judges are encouraged to comply with the mandate of N.C.G.S. § 1D-40.

**6. Alienation of Affections; Criminal Conversation— abolishment—not Court of Appeals prerogative**

Although defendant contended that the North Carolina Supreme Court's decision in *Cannon v. Miller*, 313 N.C. 324, (refusing to abolish the torts of alienation of affections and criminal conversation) should be reconsidered, it is not the Court of Appeals prerogative to overrule or ignore clearly written decisions of the Supreme Court.

Judge HUNTER concurring in part and dissenting in part.

HUTELMYER v. COX

[133 N.C. App. 364 (1999)]

Appeal by defendant from order entered 30 September 1997 by Judge J. Kent Washburn in Alamance County District Court. Heard in the Court of Appeals 17 February 1999.

*Walker & Bullard, by Daniel S. Bullard, for plaintiff-appellee.*

*Wishart, Norris, Henninger & Pittman, P.A., by Pamela S. Duffy, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Margie B. Cox (defendant) appeals from an order denying her motion for a new trial or, in the alternative, for remittitur of the compensatory and punitive damages awarded to Dorothy Rowen Hutelmyer (plaintiff) in her action for alienation of affections and criminal conversation. Having thoroughly examined defendant's assignments of error, we uphold the decision of the trial court.

Plaintiff brought this action against defendant on 8 March 1996 for alienating the affections of her husband and for criminal conversation. Plaintiff's evidence tended to show the following facts. Plaintiff and Joseph Hutelmyer were married on 14 October 1978 and lived together with their three children until 5 January 1996, when Mr. Hutelmyer left the marital home to live with defendant. Plaintiff and Mr. Hutelmyer subsequently divorced, and on 15 May 1997, he and defendant were married.

Throughout the 1980's and into the early 1990's, plaintiff and Mr. Hutelmyer had what plaintiff described as "a fairy tale marriage"—one that was loving, warm, and devoted. They vacationed together with their family, and plaintiff often traveled with Mr. Hutelmyer on business trips to England, Hawaii, Arizona, Florida, West Virginia, Boston and San Francisco. Together, they also coached their children's soccer teams and volunteered in church and community organizations.

Mr. Hutelmyer often expressed his love for plaintiff by writing romantic poetry for her. In 1981, Mr. Hutelmyer wrote a poem entitled "Why I Love You," and in 1990, he wrote the sequel entitled "Why I Love You, II" as a gift for plaintiff on Valentine's Day. Mr. Hutelmyer conceded that "things must have been going pretty well then . . . to write that poem and give it to her." For Valentine's Day in 1992, Mr. Hutelmyer recorded a collection of love songs for plaintiff and gave her a card, in which he drew a heart and wrote "1992." The couple

also maintained an active sexual relationship, engaging in sex at least once or twice per week.

During the marriage, Mr. Hutelmyer was employed at Seaboard Underwriters, and defendant began work as his secretary in 1986. According to her co-workers, defendant's demeanor when she began her employment was "matronly." She wore predominantly dark clothing and long skirts. Then, in May of 1992, defendant separated from her husband, and she, thereafter, became openly flirtatious and spent increasingly more time alone with Mr. Hutelmyer. Defendant's co-workers testified that she changed her appearance. She cut and dyed her hair and wore short skirts, low-cut blouses, and tight clothing to the office. At or near the same time, defendant and Mr. Hutelmyer began to arrive at work together or within minutes of each other, to dine together alone, and to work late hours at the office. Many nights, defendant and Mr. Hutelmyer were the only employees working late. The testimony of defendant's co-workers also revealed that although defendant rarely traveled in connection with her employment prior to 1990, in 1992, she began accompanying Mr. Hutelmyer on business trips.

Plaintiff's evidence further showed that beginning in 1993, Mr. Hutelmyer began to spend a considerable amount of time at defendant's home. Defendant's former neighbor testified that she frequently saw Mr. Hutelmyer's vehicle parked at defendant's home overnight, from approximately 9:00 p.m. until 5:30 a.m. the following morning. In addition, a co-worker of defendant and Mr. Hutelmyer testified that when she visited her parents, who resided near defendant, she observed Mr. Hutelmyer's car at defendant's house at all hours of the day and night.

Co-workers of defendant and Mr. Hutelmyer also testified that the couple flaunted their familiarity with one another. The lovers would hold hands at the workplace, and defendant would sit in Mr. Hutelmyer's office in a dress with her legs thrown sideways across the chair. Additionally, defendant often straightened Mr. Hutelmyer's ties and brushed lent from his suits. During a work-related outing at a Putt-Putt facility, defendant stood very close to Mr. Hutelmyer and ate ice out of his drinking cup.

As defendant and Mr. Hutelmyer became closer, he began to spend less time with his wife and family. Plaintiff testified that their sexual relationship began to deteriorate because Mr. Hutelmyer began to lose interest in her sexually. On one occasion in 1992 when

plaintiff attempted to initiate intimacy with her husband, he stated, "I—I don't feel right about doing this." When she asked him what was wrong, he claimed to be experiencing work-related pressures but maintained that he was still very much in love with her. Plaintiff further testified that Mr. Hutelmyer began coming home very late at night, and when he went to their children's evening soccer games, he would not come home with the family after the games were over, claiming that he had to go back to work.

Plaintiff also recalled that in 1992, Mr. Hutelmyer stopped allowing her to travel with him on business trips. When she questioned him about the change, he told her that there had been a change in the company policy which excluded spouses from work-related trips. Despite the changes in Mr. Hutelmyer's behavior, plaintiff believed that her husband still loved her. She continued to regard their marriage as strong and loving, until 1994, when Mr. Hutelmyer lost all desire to have sex with plaintiff and their sexual relationship ceased. The couple, nonetheless, remained together until 5 January 1996, when Mr. Hutelmyer told plaintiff that he was leaving. Plaintiff testified that she was shocked and heartbroken by the news, because it was the first time they had mentioned separation.

According to defendant, she and Mr. Hutelmyer began a sexual relationship in 1994, which continued, with few interruptions, throughout the duration of his marriage to plaintiff. Defendant claimed that Mr. Hutelmyer had told her that he and plaintiff were separated, and she believed that he had moved out of the marital home and into an apartment. Mr. Hutelmyer told defendant at various times in their relationship that he wanted to end the affair and try to work things out with his wife. Invariably, however, they resumed their relationship, and on 1 January 1996, Mr. Hutelmyer gave defendant an engagement ring. On 5 January 1996, he left the marital home and moved in with defendant.

At the close of plaintiff's evidence and again at the close of all the evidence, defendant moved for a directed verdict on all claims. The trial court denied the motions, and the case was submitted to the jury. The jury returned a verdict finding defendant liable for alienation of affections and criminal conversation, for which the jury awarded plaintiff $500,000 in compensatory damages and $500,000 in punitive damages. Defendant's subsequent oral motions for judgment notwithstanding the verdict (j.n.o.v.), to set aside the award of punitive damages, and for remittitur were all denied. Then, on 15 August 1998,

## HUTELMYER v. COX

[133 N.C. App. 364 (1999)]

defendant filed a written motion for a new trial under Rule 59(a) of the North Carolina Rules of Civil Procedure. The trial court denied the motion by order dated 30 September 1997, and defendant appeals.

---

**[1]** Defendant, by her first assignment of error, contends that the trial court erroneously denied her motions for directed verdict and j.n.o.v. on plaintiff's claim for alienation of affections. Defendant argues that the evidence was insufficient as a matter of law to show that she acted maliciously in alienating the affections of plaintiff's husband. We must disagree.

A motion for directed verdict or j.n.o.v. tests the sufficiency of the evidence to carry the case to the jury. *Chappell v. Redding*, 67 N.C. App. 397, 399, 313 S.E.2d 239, 241 (1984). In deciding whether to grant or deny a motion for directed verdict or j.n.o.v., the trial court must examine the evidence in the light most favorable to the plaintiff, who is entitled to the benefit of every inference and intendment that may reasonably be drawn from the evidence. *Id.* Where, after engaging in such an analysis, the trial court finds that there is more than a scintilla of evidence supporting each element of the plaintiff's claim, the motion for directed verdict or j.n.o.v. should be denied. *Norman Owen Trucking v. Morkoski*, 131 N.C. App. 168, 172, 506 S.E.2d 267, 270 (1998).

To survive a motion for directed verdict or j.n.o.v. on a claim for alienation of affections, the plaintiff must present evidence to show that: "(1) plaintiff and [her husband] were happily married and a genuine love and affection existed between them; (2) the love and affection was alienated and destroyed; and (3) the wrongful and malicious acts of defendant produced the alienation of affections." *Chappell*, 67 N.C. App. at 399, 313 S.E.2d at 241. A defendant is not liable for the tort simply because she has "becom[e] the object of the affections that are alienated from a spouse." *Peake v. Shirley*, 109 N.C. App. 591, 594, 427 S.E.2d 885, 887 (1993). "There must be active participation, initiative or encouragement on the part of the defendant in causing one spouse's loss of the other spouse's affections for liability to arise." *Id.* However, it is not necessary that the malicious conduct of the defendant, by itself, provoke the alienation of affections. *Heist v. Heist*, 46 N.C. App. 521, 265 S.E.2d 434 (1980). All that is necessary to establish the tort is to show that the wrongful acts of the defendant were "the controlling or effective cause of the alienation, even though there were other causes, which might have contributed to the alienation." *Id.* at 523, 265 S.E.2d at 436. Furthermore, evidence of marital

difficulties does not compel a directed verdict or j.n.o.v. in favor of the defendant on the plaintiff's claim for alienation of affections. *Chappell*, 67 N.C. App. at 400, 313 S.E.2d at 241.

Taken in the light most favorable to plaintiff, the evidence tended to show that prior to 1993, plaintiff and Mr. Hutelmyer had "a fairy tale marriage." They traveled together, volunteered in church and community organizations together, and coached their children's soccer teams together. In addition, Mr. Hutelmyer often expressed his love and affection for plaintiff through sentimental poetry. One such poem, written in 1990 and entitled "Why I Love You, II", read as follows:

Three little angels, trips for two each May; lunch with couch potato, a rocking horse, sleigh, hunting eggs at Easter, puzzles on the wall; Indians in summer, soccer spring and fall; sleepy eyes at sunrise, T.V. time at nine; volunteer extra ordinaire, play games at any time; special gift with children, sound sleep without end; patience and understanding, my very, very best friend. Happy Valentine's Day. Love, Joe.

Plaintiff's evidence also tended to show that the love and affection that once existed between her and her husband was alienated and destroyed by defendant's conduct. In 1992, following the breakup of her marriage, defendant openly flirted with plaintiff's husband and spent increasingly more time alone with him. She dined alone with him, worked late hours alone with him, arrived at work with him or within minutes of him, and traveled with him on business. Mr. Hutelmyer also began spending the night at defendant's home.

Plaintiff testified that in 1992, her husband began to lose interest in her sexually and that the couple's sexual relationship began to deteriorate as a result. As he spent more time with defendant, plaintiff's husband began to spend increasingly less time with plaintiff and their children. Accordingly, we hold that plaintiff presented sufficient evidence to overcome defendant's motions for directed verdict and j.n.o.v., and the trial court properly submitted plaintiff's claim for alienation of affections to the jury.

[2] With her next assignment of error, defendant challenges the sufficiency of the evidence to support the award of punitive damages for alienation of affections and criminal conversation. Defendant contends that "adultery may support an award of compensatory damages for alienation of affections and/or criminal conversation, but aggra-

vating conduct beyond the mere adultery must be shown to support an award of punitive damages for either tort." We are not persuaded.

Our legislature has said that "[p]unitive damages may be awarded, in an appropriate case . . . , to punish a defendant for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts." N.C. Gen. Stat. § 1D-1 (1997). In an action for alienation of affections, punitive damages are recoverable "where the defendant's conduct was willful, aggravated, malicious, or of a wanton character." *Chappell*, 67 N.C. App. at 403, 313 S.E.2d at 243. To establish entitlement to punitive damages for alienation of affections, the plaintiff must present "evidence of circumstances of aggravation in addition to the malice implied by law from the conduct of defendant in alienating the affections between the spouses which was necessary to sustain a recovery of compensatory damages." *Id.*

In the instant case, evidence that plaintiff's marriage deteriorated due to defendant's ongoing adulterous relationship with plaintiff's husband was sufficient to submit the issue of alienation of affections to the jury. As to the additional circumstances of aggravation justifying punitive damages, the evidence tended to show that defendant publicly displayed the intimate nature of her relationship with plaintiff's husband. A co-worker of defendant and Mr. Hutelmyer testified that the paramours often held hands in the workplace, and defendant frequently straightened Mr. Hutelmyer's ties and brushed lent from his suits at business functions. Another co-worker testified that in 1994, during a work outing at a Putt-Putt facility, defendant stood very close to plaintiff's husband and ate ice out of his drinking cup. Defendant's behavior toward Mr. Hutelmyer was such that most of their co-workers knew of their affair.

The evidence further showed that defendant welcomed plaintiff's husband into her home at all hours of the day and night, despite her knowledge of the harm that their relationship would cause his wife and three young children. Defendant's former neighbor testified that from 1993 to 1995, she frequently saw Mr. Hutelmyer's car parked at defendant's home overnight. A co-worker of defendant and Mr. Hutelmyer whose parents lived near defendant testified that beginning in 1993, she saw Mr. Hutelmyer's car at defendant's house at all times of the day and in the evening.

Taken in the light most favorable to plaintiff, the evidence also showed that defendant traveled with Mr. Hutelmyer on business trips, and like the defendant in *Jennings v. Jessen*, 103 N.C. App. 739, 407

S.E.2d 264 (1991), defendant in the present case "was auda-cious enough to call plaintiff's home [on Thanksgiving Day in 1995] to discover her husband's whereabouts." *Id.* at 744, 407 S.E.2d at 267. Therefore, we hold that plaintiff presented sufficient addi-tional circumstances of aggravation to warrant submission of the punitive damages issue to the jury on plaintiff's claim for alienation of affections.

**[3]** We hold similarly regarding the issue of punitive damages on plaintiff's claim for criminal conversation. In *Horner v. Byrnett*, 132 N.C. App. 323, 511 S.E.2d 342 (1999), this Court held that "the same sexual misconduct necessary to establish the tort of criminal conver-sation may also sustain an award of punitive damages." *Id.* at 327, 511 S.E.2d at 345. As support for our decision, we looked to Professor Lee's treatment of the issue:

> "Criminal conversation . . . does not require a showing of malice. For this tort, the question is not whether the plaintiff has shown malice beyond what is needed to establish the tort, but what evi-dence suffices to show the kind of reckless conduct justifying punitive damages. In fact, the appellate cases prove that the sex-ual intercourse that is necessary to establish the tort also sup-ports an award of punitive damages: as long as there is enough evidence of criminal conversation to go to the jury, the jury may also consider punitive damages[.] . . . [W]hen the plaintiff proves sexual relations between the defendant and spouse, then it seems to take little else to establish both the tort and the right to puni-tive damages."

*Id.* (quoting 1 Suzanne Reynolds, Lee's North Carolina Family Law § 5.48(C) (5th ed. 1993)).

The evidence is conclusive that during the course of plaintiff's marriage, defendant engaged in a sexual relationship with plaintiff's husband which endured for several years. This evidence, as well as the evidence of additional circumstances of aggravation discussed above, provided overwhelming support for an award of punitive dam-ages on plaintiff's claim for criminal conversation. Accordingly, we conclude that the trial court did not err in submitting the issue of punitive damages for criminal conversation to the jury. Defendant's assignment of error, then, fails.

**[4]** Defendant next assigns as error the trial court's failure to grant a new trial on the issue of compensatory and punitive damages for

alienation of affections and criminal conversation. Defendant contends that as to compensatory damages, plaintiff failed to present evidence establishing a loss of support commensurate to the damages awarded. Regarding punitive damages, defendant argues that the jury awarded excessive damages as a matter of law. We will address the issues of compensatory damages and punitive damages separately.

The rule is well settled that a motion for a new trial under Rule 59 of the North Carolina Rules of Civil Procedure "is addressed to the sound discretion of the trial judge," whose ruling "is not reviewable on appeal, absent manifest abuse of discretion." *Blow v. Shaughnessy*, 88 N.C. App. 484, 493-94, 364 S.E.2d 444, 449 (1988). Thus, we will not reverse a trial court's decision denying a new trial, unless "an abuse of discretion is clearly shown resulting in a substantial miscarriage of justice." *Travis v. Knob Creek, Inc.*, 84 N.C. App. 561, 563, 353 S.E.2d 229, 230, *rev'd on other grounds*, 321 N.C. 279, 362 S.E.2d 277 (1987).

In *Sebastian v. Kluttz*, 6 N.C. App. 201, 170 S.E.2d 104 (1969), this Court described the injuries for which compensatory damages are appropriate in an alienation of affections action:

> In a cause of action for alienation of affections of the husband from the wife, the measure of damages is the present value in money of the support, consortium, and other legally protected marital interests lost by her through the defendant's wrong. In addition thereto, she may also recover for the wrong and injury done to her health, feelings, or reputation.

*Id.* at 219, 170 S.E.2d at 115. As for criminal conversation, our courts have recognized that the measure of damages is incapable of precise computation. *Gray v. Hoover*, 94 N.C. App. 724, 730, 381 S.E.2d 472, 475 (1989). In awarding such damages, the jury "may consider the loss of consortium, mental anguish, humiliation, injury to health, and loss of support[.]" *Sebastian*, 6 N.C. App. at 220, 170 S.E.2d at 116. Consortium is defined as the " '[c]onjugal fellowship of husband and wife, and the right of each to the company, co-operation, affection, and aid of the other in every conjugal relation.' " *Id.* at 219-20, 170 S.E.2d at 115 (quoting Black's Law Dictionary, 4th ed.) Therefore, loss of support is but one element of damages in an action for alienation of affections or criminal conversation. *Heist*, 46 N.C. App. at 525, 265 S.E.2d at 437. Indeed, as Professor Lee notes, "the gravamen of damages in these torts is mental distress, a fact that gives juries considerable freedom in their determinations." Reynolds, *supra* § 5.48(A).

In addition to plaintiff's evidence showing a loss of income, life insurance, and pension benefits resulting from the actions of defendant, there was plenary evidence that plaintiff likewise suffered loss of consortium, mental anguish, humiliation, and injury to health. Plaintiff's testimony revealed that after defendant became involved with Mr. Hutelmyer, the sexual relationship between plaintiff and her husband deteriorated and ultimately ceased. In addition, Mr. Hutelmyer spent considerably less time in the company of plaintiff and their children.

The evidence further showed that plaintiff became physically and emotionally ill after Mr. Hutelmyer left the marital home. She had problems sleeping, and she lost twenty pounds due to her lack of appetite. To cope with the emotional pain and stress she and her children were experiencing, she sought counseling at a Women's Resource Center. Therefore, we conclude that plaintiff presented sufficient evidence to support the $500,000 award of compensatory damages for alienation of affections and criminal conversation. We turn, then, to the issue of punitive damages.

**[5]** Chapter 1D of our General Statutes governs the punitive damage award made in the instant case. Section 1D-35 states that in determining the amount to be awarded in punitive damages, the jury "[s]hall consider the purposes of punitive damages set forth in G.S. 1D-1." N.C. Gen. Stat. § 1D-35(1) (1997). With respect to what evidence is relevant in setting a punitive damages amount, the statute provides that the jury may take into account only that evidence which pertains to the following:

a. The reprehensibility of the defendant's motives and conduct.

b. The likelihood, at the relevant time, of serious harm.

c. The degree of the defendant's awareness of the probable consequences of its conduct.

d. The duration of the defendant's conduct.

e. The actual damages suffered by the claimant.

f. Any concealment by the defendant of the facts or consequences of its conduct.

g. The existence and frequency of any similar past conduct by the defendant.

h. Whether the defendant profited from the conduct.

i. The defendant's ability to pay punitive damages, as evidenced by its revenues or net worth.

N.C.G.S. § 1D-35(2). Section 1D-25(b) limits the amount of recovery in punitive damages as follows:

> Punitive damages awarded against a defendant shall not exceed three times the amount of compensatory damages or two hundred fifty thousand dollars ($250,000), *whichever is greater.* If a trier of fact returns a verdict for punitive damages in excess of the maximum amount specified under this subsection, the trial court shall reduce the award and enter judgment for punitive damages in the maximum amount.

N.C. Gen. Stat. § 1D-25(b) (1997) (emphasis added).

As previously held, the plaintiff presented sufficient evidence to show her entitlement to punitive damages for alienation of affections and criminal conversation. Furthermore, there was evidence before the jury concerning "[t]he reprehensibility of the defendant's motives and conduct," "[t]he likelihood . . . of serious harm," "[t]he degree of the defendant's awareness of the probable consequences of its conduct," "[t]he duration of the defendant's conduct," and "[t]he actual damages suffered by the claimant." N.C.G.S. § 1-35(2). Once the right to punitive damages is established, the amount of such damages to be awarded the plaintiff " 'rests in the sound discretion of the jury although the amount assessed is not to be excessively disproportionate to the circumstances of contumely and indignity present in the case.' " *Juarez-Martinez v. Deans,* 108 N.C. App. 486, 495-96, 424 S.E.2d 154, 160 (1993) (quoting *Carawan v. Tate,* 53 N.C. App. 161, 165, 280 S.E.2d 528, 531 (1981)). Here, the jury awarded plaintiff $500,000 in compensatory damages and $500,000 in punitive damages for alienation of affections and criminal conversation. Under section 1D-25(b), the maximum amount of punitive damages the jury could have awarded was $1,500,000 (three times the amount of compensatory damages); therefore, we cannot say that the amount of punitive damages was excessive as a matter of law. Hence, the trial court did not abuse its discretion in upholding the jury's award, and defendant's assignment of error to the contrary must fail.

In passing, we note that under section 1D-40, "the court shall instruct the jury with regard to subdivisions (1) and (2) of G.S. 1D-35." N.C. Gen. Stat. § 1D-40 (1997). While the court, in the instant case, instructed the jury that in determining the award amount, it

must bear in mind the purpose of punitive damages (subdivision (1)), the court failed to charge the jury regarding which factors it may consider when setting the amount of punitive damages (subdivision (2)). Defendant has not presented this issue for our review and, thus, we do not address it at this juncture. We mention the matter simply to encourage trial judges to comply with the mandate of section 1D-40 in future litigation.

**[6]** By her final assignment of error, defendant argues that our Supreme Court's decision in *Cannon v. Miller*, 313 N.C. 324, 327 S.E.2d 888 (1985), refusing to abolish the torts of alienation of affections and criminal conversation should be reconsidered. While defendant's arguments are skillfully presented, "it is not our prerogative to overrule or ignore clearly written decisions of our Supreme Court." *Kinlaw v. Long Mfg.*, 40 N.C. App. 641, 643, 253 S.E.2d 629, 630, *rev'd on other grounds*, 298 N.C. 494, 259 S.E.2d 552 (1979). Hence, we summarily overrule defendant's assignment of error.

Based upon the foregoing, we conclude that defendant enjoyed a fair trial, free of prejudicial error.

No error.

Judge SMITH concurs.

Judge HUNTER concurs in part and dissents in part.

Judge HUNTER concurring in part and dissenting in part.

I disagree with the majority opinion which states that "plaintiff presented sufficient additional circumstances of aggravation to warrant submission of the punitive damages issue to the jury on plaintiff's claim for alienation of affections" and, therefore, respectfully dissent from that narrow portion of the majority opinion. I concur with the balance of the majority opinion since we are bound by prior decisions of the North Carolina Supreme Court and this Court as to the other issues raised in this appeal. I note further that our General Assembly has recently rejected an effort to abolish the common law cause of action for alienation of affections.

"Punitive damages may be awarded [to plaintiff] in an action of alienation of affections . . . for the wilful, wanton, aggravated or malicious conduct of defendant *towards her*." *Heist v. Heist*, 46 N.C. App. 521, 526-27, 265 S.E.2d 434, 438 (1980) (emphasis added); *see also*

*Powell v. Strickland,* 163 N.C. 393, 79 S.E. 872 (1913). "It is incumbent on the plaintiff to show circumstances of aggravation in addition to the malice implied by law from the conduct of defendant in causing the separation of plaintiff and her husband which was necessary to sustain a recovery of compensatory damages." *Heist,* 46 N.C. App. at 527, 265 S.E.2d at 438.

In the present case, I believe plaintiff's wrongful conduct, as set forth in the majority opinion, was sufficient to establish the tort but I do not believe plaintiff has shown sufficient additional circumstances of aggravation *directed to her* to justify submitting the issue of punitive damages to the jury. *See Jennings v. Jessen,* 103 N.C. App. 739, 407 S.E.2d 264 (1991) (punitives upheld because defendant's known cohabitation with plaintiff's spouse in property owned by plaintiff and her husband was a sufficient additional circumstance of aggravation beyond the acts substantiating the claim of alienation of affections); *Shaw v. Stringer,* 101 N.C. App. 513, 400 S.E.2d 101 (1991) (punitives upheld because defendant's repeated sexual relations with plaintiff's wife in the marital home and callous laughter when told plaintiff had learned of the affair constituted sufficient additional acts in aggravation to support the claim for punitive damages); *Chappell v. Redding,* 67 N.C. App. 397, 403, 313 S.E.2d 239, 243, *disc. review denied,* 311 N.C. 399, 319 S.E.2d 268 (1984) (punitives set aside because Court found "while plaintiff's evidence of the problems caused in his marriage by defendant's actions and the increasing amounts of time spent with plaintiff's wife was enough to permit the alienation of affections issue to go to the jury, plaintiff has not shown additional circumstances of aggravation to justify the submission of the punitive damages issue"); *Heist,* 46 N.C. App. 521, 265 S.E.2d 438 (punitives set aside for lack of showing of additional aggravating circumstances sufficient to justify submitting the issue of punitive damages to the jury).

The cases upholding punitive damages awards are characterized by some offensive contact between plaintiff and defendant which flaunted the relationship between the defendant and plaintiff's spouse. Here, other than the one telephone call on Thanksgiving Day in 1995 where defendant merely left a message for Mr. Hutelmyer to call her, there is no evidence that defendant flaunted the relationship in plaintiff's face. In fact, the uncontradicted evidence established by plaintiff's own testimony is that she never knew about the relationship between her husband and defendant until her husband left her in January of 1996.

For the foregoing reasons, I believe the punitive damages award with respect to the alienation of affections claim should be set aside as a matter of law. Since the punitive damages award in this case was in one lump sum for both the alienation of affections and criminal conversation claims, this matter should be remanded for a determination of that amount to which plaintiff is entitled.