STATE OF NORTH CAROLINA v. JAMES SUMNER LEE

No. 27

(Filed 14 October 1970)

1. Weapons and Firearms — possession of machine or submachine gun — sufficiency of warrant — motion to quash

A warrant charging that the defendant "did possess a machine gun or submachine gun or other like weapon, to wit: a Universal Caliber 30 M1 Carbine, Serial No. 135258, capable of firing 31 shots by the successive pulling of the trigger," *is held* sufficient to charge a violation of the offense making it unlawful for any person to possess machine guns, submachine guns, or other automatic or semiautomatic weapons, with the exception of such weapons which shoot less than 31 shots; the trial court in this case erred in granting defendant's motion to quash on the ground that the carbine in his possession could only fire 30 shots. G.S. 14-409.

2. Statutes § 5— construction of words

When the words of a statute have not acquired a technical meaning, they must be construed in accordance with their common and ordinary meaning unless a definite meaning is apparent or definitely indicated by the context.

3. Statutes § 5— ejusdem generis rule

In the construction of statutes, the *ejusdem generis* rule is that where general words follow a designation of particular subjects or things, the meaning of the general words will ordinarily be presumed to be, and construed as, restricted by the particular designations and as including only things of the same kind, character and nature as those specifically enumerated.

4. Indictment and Warrant § 14— motion to quash

A motion to quash can be properly allowed on the ground that the matter charged does not constitute a criminal offense.

5. Indictment and Warrant § 14— motion to quash — consideration of extraneous evidence

In ruling on a motion to quash, the court is not permitted to consider extraneous evidence, and when the defect must be established by evidence *aliunde* the record, the motion must be denied.

APPEAL by the State under the provisions of G.S. 7A-30(2) from the Court of Appeals.

Defendant was tried in District Court in Lee County on 9 September 1969 on a warrant charging the unlawful possession of a machine gun or submachine gun or other like weapon, in violation of G.S. 14-409, and from a verdict of guilty appealed to the Superior Court for trial *de novo*. Upon the call of the case in

Superior Court on 28 October 1969, defendant moved to quash the warrant because: (1) the weapon described in the warrant was not such a weapon as was covered by the statute, and (2) as applied to defendant the statute (G.S. 14-409) was void for vagueness. The trial court ruled that the weapon described in the warrant was not a machine gun, submachine gun or other like weapon within the meaning of G.S. 14-409, and quashed the warrant. The State appealed, and the Court of Appeals affirmed, with Judge Graham dissenting. 8 N.C. App. 601, 174 S.E. 2d 658.

*Attorney General Robert Morgan and Staff Attorney Donald M. Jacobs for the State.*

*Pearson, Malone, Johnson & DeJarmon for defendant appellee.*

MOORE, Justice.

[1]   The warrant charged that defendant "did possess a machine gun or submachine gun or other like weapon, to wit: a Universal Caliber 30 M1 Carbine, Serial No. 135258, capable of firing thirty-one (31) shots, by the successive pulling of the trigger . . . in violation of G.S. 14-409." G.S. 14-409 in pertinent part provides: "It shall be unlawful for any person . . . to possess machine guns, submachine guns, or other like weapons. . . . Provided, further, that automatic shotguns and pistols or other automatic weapons that shoot less than thirty-one shots shall not be construed to be or mean a machine gun or submachine gun under this section."

[2]   When the words of a statute have not acquired a technical meaning, they must be construed in accordance with their common and ordinary meaning unless a definite meaning is apparent or definitely indicated by the context. *Greensboro v. Smith,* 241 N.C. 363, 85 S.E. 2d 292; *Alliance Co. v. State Hospital,* 241 N.C. 329, 85 S.E. 2d 386. The usual and customary definitions of the words used in this statute are as follows: A machine gun is defined as "an automatic gun using small-arms ammunition for rapid continuous firing"; a submachine gun as "a lightweight automatic or semiautomatic portable firearm fired from the shoulder or hip"; a carbine as "a light automatic or semiautomatic military rifle" (Webster's Seventh New Collegiate Dictionary) ; and an automatic rifle as "a rifle capable commonly of either semiautomatic or full automatic fire and de-

signed to be fired without a mount." (Webster's Third New Collegiate Dictionary.)

The word "automatic" as used in connection with a firearm is one "using either gas pressure or force of recoil and mechanical spring action for repeatedly ejecting the empty cartridge shell, introducing a new cartridge and firing it," while a semiautomatic firearm is defined as one "employing gas pressure or force of recoil and mechanical spring action to eject the empty cartridge case after the first shot and load the next cartridge from the magazine but requiring release and another pressure of the trigger for each successive shot." (Webster's Seventh New Collegiate Dictionary.) The technical difference then between the automatic and semiautomatic weapon is that the automatic continues to fire without further pull of the trigger while the semiautomatic requires another pull of the trigger for each successive shot. The semiautomatic is autoloading in that it is loaded automatically but does not fire automatically. The automatic both loads and fires automatically. While technically there is this difference, in ordinary usage the word "automatic" is used to describe both automatic and semiautomatic weapons.

[3]  Applying the definitions from Webster to the words of the statute (G.S. 14-409), a machine gun is automatic, a submachine gun can be automatic or semiautomatic. What then is meant by the phrase, "or other like weapons"? "In the construction of statutes, the *ejusdem generis* rule is that where general words follow a designation of particular subjects or things, the meaning of the general words will ordinarily be presumed to be, and construed as, restricted by the particular designations and as including only things of the same kind, character and nature as those specifically enumerated." *State v. Fenner,* 263 N.C. 694, 140 S.E. 2d 349; *State v. Smith,* 265 N.C. 173, 143 S.E. 2d 293; *State v. Ross,* 272 N.C. 67, 157 S.E. 2d 712. Applying this rule, the statute would then read: "It shall be unlawful for any person . . . to possess machine guns, submachine guns, or other automatic or semiautomatic weapons."

The statute goes further, however, and has a proviso which excludes automatic shotguns and pistols or other automatic weapons that shoot less than 31 shots. Again, giving the usual and customary meaning to the word "automatic," the proviso would exclude automatic weapons or semiautomatic weapons which shoot less than 31 shots. That this interpretation is correct seems apparent from the use of the words "automatic shotguns," which

ordinarily are called automatic but invariably are semiautomatic. The real reason for the exclusion under this proviso is not the difference in the rate of fire between an automatic and a semiautomatic weapon, but the more important consideration is the number of shots which can be fired without reloading. The better reasoning seems to be, and we so hold, that the General Assembly intended to include within the prohibition of the statute all weapons either automatic or semiautomatic which shoot 31 times or more and to exclude such weapons which shoot less than 31 times.

[1] The warrant in this case charges that the defendant "did possess a machine gun or submachine gun or other like weapon, to wit: a Universal Caliber 30 M1 Carbine, Serial No. 135258, capable of firing 31 shots by the successive pulling of the trigger." In effect this charges that the carbine in question was a semiautomatic weapon capable of firing 31 shots. The defendant contends that by the manufacturer's specifications this carbine shoots less than 31 shots—30 to be exact—and therefore it is expressly excluded from the operation of the statute, and that the trial court properly allowed the motion to quash.

[4, 5] A motion to quash can be properly allowed on the ground that the matter charged does not constitute a criminal offense. *State v. Turner*, 170 N.C. 701, 86 S.E. 1019. In ruling on a motion to quash, however, the court is not permitted to consider extraneous evidence, and when the defect must be established by evidence *aliunde* the record, the motion must be denied. *State v. Cochran*, 230 N.C. 523, 53 S.E. 2d 663; *State v. Cooke*, 248 N.C. 485, 103 S.E. 2d 846, app. dismd. in part 359 U.S. 951, 3 L. ed. 2d 759, 79 S. Ct. 737, app. dismd. *Wolfe v. North Carolina*, 364 U.S. 177, 4 L. ed. 2d 1650, 80 S. Ct. 1482, reh. den. 364 U.S. 856, 5 L. ed. 2d 80, 81 S. Ct. 29.

[1] The warrant in this case properly charged that the carbine in question was capable of firing 31 shots. To sustain the motion to quash, it was necessary for the trial court to find from evidence *dehors* the record that it would fire only 30 shots. This was error.

If the defendant's contention is correct and the carbine shoots only 30 shots, it is legal under the statute; if it shoots more, it is illegal. This is a matter to be determined in the trial,

upon proper proof, and the motion to quash should have been overruled.

The decision of the Court of Appeals is

Reversed.