RALEIGH PLACE ASSOCIATES v. CITY OF RALEIGH, BOARD OF ADJUSTMENT

No. 8810SC1349

(Filed 15 August 1989)

**Municipal Corporations § 39.13— sign across bank drive-through lanes—prohibited roof sign**

Respondent board of adjustment properly found that a sign erected by petitioner was a prohibited roof sign and not a permitted canopy sign where the sign was located on the top of a structure which extended approximately 25 feet from the wall of petitioner's building across two driveway lanes used by bank patrons who used drive-through teller windows.

RALEIGH PLACE ASSOC. v. CITY OF RALEIGH

[95 N.C. App. 217 (1989)]

APPEAL of respondent from *Ellis, Craig B., Judge.* Judgment entered 31 August 1988. Heard in the Court of Appeals 8 June 1989.

Respondent, the Board of Adjustment of the City of Raleigh, appeals from a certiorari decision which declared that petitioner Raleigh Place Associates' sign was not prohibited by the Raleigh City Code.

*Smith Helms Mulliss & Moore, by David C. Keesler, for petitioner-appellee.*

*Associate City Attorney Elizabeth C. Murphy for respondent-appellant.*

JOHNSON, Judge.

Petitioner Raleigh Place Associates submitted building plans for a proposed office building, to be located at 316 West Edenton Street in Raleigh, to the City of Raleigh for zoning approval. These plans included drawings depicting a sign which was to be located on a structure which would cover the drive-through teller windows of Southern National Bank, a tenant in the proposed office building. The City approved these plans. The City requires that every individual sign be approved in a separate review process, but petitioner did not obtain such approval for the sign in question.

The office building at 316 West Edenton Street was completed in August, 1986. Petitioner then erected the sign in question. The sign is approximately 42 inches high and 171 inches long, and it displays in 14-inch block lettering the words "Southern National Bank." The sign is located on the top of a structure which extends approximately 25 feet from the wall of the building and covers two driveway lanes which are used by patrons who use the drive-through teller windows.

On 10 September 1986, petitioner received notification from City of Raleigh Zoning Inspector Scott Mills that the sign in question violated sec. 10-2065.5(9) of the Raleigh City Code. This section of the Code prohibits any newly erected roof sign which is not authorized by the city council. On 15 September 1986, petitioner filed an application with the Raleigh Board of Adjustment seeking either a reversal of the zoning inspector's decision or, in the alternative, a variance allowing the sign in question to remain. On 13 October 1986, the Board upheld the zoning inspector's decision and denied petitioner's request for a variance.

RALEIGH PLACE ASSOC. v. CITY OF RALEIGH

[95 N.C. App. 217 (1989)]

On 21 November 1986, petitioner filed a petition for review by the superior court of Wake County requesting that the court issue its writ of certiorari to review the Board's decision. This petition was granted on 12 May 1987. The court filed a certiorari decision on 1 September 1988 which reversed the Board's decision. The court found that the sign in question was not a roof sign, which is prohibited by the Code, but was instead a canopy sign, which is permitted by the Code.

Respondent's first contention on appeal is that the Board properly found that the sign in question is a prohibited roof sign and not a permitted canopy sign. We agree.

The sign in question is prohibited by the Raleigh City Code if it is attached to a roof, but the sign is permitted if it is attached to a canopy. Any newly erected roof sign which is not authorized by the city council is prohibited, Raleigh City Code sec. 10-2065.5(9), and there is no evidence that petitioner sought or received authorization from the city council to erect the sign in question. The Code defines a "roof sign" as "[a]ny sign . . . attached to and extending from the roof of a structure or building." *Id.* sec. 10-2002. The Code does allow marquee signs, however. *Id.* sec. 10-2065.2(a). The Code also states that a sign erected on a canopy is considered to be a marquee sign. *Id.* sec. 10-2002. The Code does not provide any definitions of the words "roof" or "canopy."

The sign in question is not attached to a canopy. The words of a statute must be construed in accordance with their ordinary and common meaning unless they have acquired a technical meaning or unless a definite meaning is apparent or indicated by the context of the words. *State v. Lee*, 277 N.C. 242, 176 S.E.2d 772 (1970). The *Lee* rule, like other rules of statutory construction, is applicable to the construction of municipal ordinances. *Cogdell v. Taylor*, 264 N.C. 424, 142 S.E.2d 36 (1965). The ordinary meanings of the word "canopy" are set forth in Webster's Third New International Dictionary, which in part defines a canopy as "a covering usu[ally] for shelter or protection." Webster's Third New International Dictionary 328 (1968). *Webster's* includes with this definition an exhaustive list of sub-definitions. *Id.* This list of sub-definitions includes "a . . . cover providing shelter and decoration (as over a door or window)" and "an awning or marquee often stretching from doorway to curb." *Id.* The structure in question is not located over a traditional type of window or door, and it doesn't ex-

tend from the doorway to the curb, so it cannot be classified as a canopy according to what we believe to be the ordinary and common understanding of the word "canopy."

We find that the sign in question is attached to a roof. *Webster's* defines a roof as "the outside cover of a building or structure." *Id.*, p. 1971. This broad definition clearly encompasses the cover of the structure to which the sign in question is attached.

Respondent's second contention on appeal is that the superior court erred in reversing the Board's decision that the sign in question is a roof sign. We agree. The decisions of a municipal board of adjustment are final, "subject to the right of the courts to review errors in law and to give relief against its orders which are arbitrary, oppressive, or attended with manifest abuse of authority." *Lee v. Board of Adjustment*, 226 N.C. 107, 109, 37 S.E.2d 128, 131 (1946). Our discussion of respondent's first contention on appeal demonstrates that the Board's decision did not constitute an error of law, and the Board's decision was also not arbitrary, oppressive, or attended with manifest abuse of authority. The superior court therefore erred in reversing the Board's decision.

Reversed.

Judges COZORT and GREENE concur.