NEAL MILLER, PLAINTIFF v. B.H.B. ENTERPRISES, INC., D/B/A VINNIE'S SARDINE GRILLE & RAW BAR, DEFENDANT

No. COA01-1282

(Filed 3 September 2002)

**1. Evidence— lay opinion—intoxication of assailant**

The trial court did not err in a negligence action that originated in a beating outside a restaurant by admitting lay opinion testimony that the off-duty bouncer who punched and kicked plaintiff was intoxicated. The testimony was based on first-hand knowledge from personal observation and was relevant and helpful to the jury. N.C.G.S. § 8C-1, Rule 701.

**2. Damages and Remedies— punitive damages—sufficiency of evidence—bouncers not halting beating**

The trial court did not err in an action originating in a beating outside a restaurant by denying the restaurant owner's motion for a directed verdict on punitive damages based on allegedly insufficient evidence that defendant's employees acted willfully and wantonly. There was testimony that defendant's manager and two bouncers witnessed the attack on plaintiff and were "very close" as plaintiff was punched, then

MILLER v. B.H.B. ENTERS., INC.

[152 N.C. App. 532 (2002)]

kicked as he lay on the ground; that the bouncers' duties included preventing fighting; and that the manager had the authority to tell the bouncers to intervene.

**3. Damages and Remedies— punitive damages—beating outside restaurant—corporate complicity—manager and bouncers standing by**

The plaintiff in a negligence action originating in a beating outside a restaurant presented evidence sufficient to support a punitive damages claim against a corporate defendant where there was ample evidence that Bennet was a manager for defendant and stood by with two bouncers while plaintiff was repeatedly kicked as he lay helpless on the ground.

**4. Negligence— beating outside restaurant—failure of manager and bouncers to intervene**

The trial court properly denied defendant restaurant owner's motion for a directed verdict on the issue of negligence in an action arising from a beating outside the restaurant where plaintiff was intoxicated and falling down; an off-duty bouncer was intoxicated and had been making fun of plaintiff; defendant's manager and two bouncers led plaintiff out the front door as a result of plaintiff's conduct toward a female bartender; plaintiff fell and was left in a perilous position; the off-duty bouncer came outside and attacked plaintiff while the manager and two bouncers watched; and neither the manager nor the bouncers offered assistance to plaintiff or took any steps to stop the attack.

**5. Negligence— intervening cause—attack outside restaurant**

Defendant restaurant owner was not relieved of negligence by an intervening cause where defendant's manager and two bouncers escorted plaintiff from the restaurant and an off-duty bouncer punched and kicked plaintiff. Defendant's manager placed plaintiff in a helpless state by removing him from the restaurant and leaving him outside with knowledge that the off-duty bouncer had been drinking and was angry at plaintiff, and did nothing when the off-duty bouncer began beating plaintiff.

**6. Negligence— instructions—bar fight—responsibility of restaurant owners**

The trial court did not err in its instructions in a negligence action arising from a beating by an off-duty bouncer.

### 7. Pleadings— amendments—negligence—last clear chance

The trial court did not abuse its discretion by allowing plaintiff to amend his pleadings to conform to evidence of last clear chance in an action arising from a beating outside a restaurant where there was sufficient evidence to support the doctrine and defendant restaurant owner did not argue that it was prejudiced by the amendment.

Judge TYSON concurring in part and dissenting in part.

Appeal by defendant from judgment entered 19 March 2001 by Judge Raymond A. Warren in Mecklenburg County Superior Court. Heard in the Court of Appeals 13 June 2002.

*The Law Offices of William K. Goldfarb, by William K. Goldfarb, for plaintiff-appellee.*

*The McIntosh Law Firm, P.C., by Christopher G. Chagaris, for defendant-appellant.*

MARTIN, Judge.

Plaintiff, Neal Miller, brought this action seeking compensatory and punitive damages from defendant, B.H.B. Enterprises, Inc., d/b/a Vinnie's Sardine Grille & Raw Bar, for injuries sustained when plaintiff was allegedly assaulted on defendant's premises. Plaintiff alleged, *inter alia*, that defendant was negligent in failing to maintain its premises in a reasonably safe condition, in placing him in a dangerous situation, and in failing to intervene when he was assaulted by a third person. In its answer, defendant denied any negligence on its part and alleged, as defenses, plaintiff's contributory negligence and the intervening criminal act of a third party.

Summarized only to the extent necessary to an understanding of the issues raised on appeal, the evidence at trial tended to show that on the evening of 18 April 1998, plaintiff, while a patron at defendant's restaurant, consumed a quantity of alcohol and became intoxicated. Jeff Beers ("Beers") was also a patron at the restaurant that evening. Beers was employed by defendant as a bouncer, but was not on duty on the evening in question. Beers also consumed alcohol and became intoxicated. During the course of the evening, plaintiff apparently became disruptive and attracted the attention of Beers. Wendy Sturges, another patron at the restaurant who didn't know plaintiff or Beers, testified that at approximately 2:00 a.m. on 19 April, she saw

**MILLER v. B.H.B. ENTERS., INC.**

[152 N.C. App. 532 (2002)]

plaintiff fall down at the bar and then saw two of defendant's on-duty bouncers take plaintiff by his arms and lead him to the entrance. As they approached the door Ms. Sturges testified that she saw plaintiff fall again, as though he had been tripped. Plaintiff staggered to his feet and went outside, accompanied by the two bouncers and defendant's manager, Radford Bennett. At that point, Ms. Sturges testified that Beers jumped over a rope at the building's entrance and began beating plaintiff with his fists. Plaintiff fell to the ground and Beers began kicking him. Neither Bennett nor either of defendant's bouncers intervened to stop the attack. Plaintiff was rendered briefly unconscious. He was transported by ambulance to the hospital, where he received approximately 15 stitches to his head and face. Plaintiff, who testified that he had no recollection of the events that occurred outside of the restaurant, sustained permanent scars to his face.

Radford Bennett testified that he was the manager of defendant's restaurant and that he hired the restaurant's employees. He instructed the two bouncers to remove plaintiff from the restaurant because it had been reported to him by a female bartender that plaintiff was grabbing women and "horsing around." He knew that the female bartender had a dating relationship with Beers. He followed the bouncers as they led plaintiff to the door. He saw Beers come out the door and he and the two bouncers watched as Beers beat and kicked plaintiff. Bennett testified that Beers had worked at the restaurant the previous night as a bouncer and was scheduled to work on the evening in question, but that when he came to work, he told Bennett that he wanted to drink there that night rather than work.

The following issues were submitted to, and answered by, the jury:

1) Was the Plaintiff injured by the negligence of the defendant?

ANSWER: Yes

2) Did the plaintiff, by his own negligence, contribute to his injury?

ANSWER: Yes

3) Did the defendant have the last clear chance to avoid the plaintiff's injury?

ANSWER: Yes

4) What amount is the plaintiff entitled to recover for personal injury?

ANSWER: $5,320.00

5) Was the plaintiff injured by the willful or wanton conduct of the defendant?

ANSWER: Yes

6) What amount of punitive damages, if any, does the jury in its discretion award to the plaintiff?

ANSWER: $15,760.00

Defendant appeals from the judgment entered upon the verdict.

---

Defendant's counsel has ignored the requirement of N.C.R. App. P. 28(b)(6) that, in an appellant's brief, "[i]mmediately following each question shall be a reference to the assignments of error pertinent to the question, identified by their numbers and by the pages at which they appear in the printed record on appeal." The Rules of Appellate Procedure are designed to expedite appellate review and defendant's failure to observe the requirements of the Rules subjects its appeal to dismissal. *See Bowen v. N.C. Dept. of Health & Human Services*, 135 N.C. App. 122, 519 S.E.2d 60 (1999); N.C.R. App. P. 25(b), 34(b)(1). Nevertheless, exercising the discretion granted us by N.C.R. App. P. 2, we will consider defendant's arguments.

I.

[1] Defendant assigns error to the admission of testimony by Wendy Sturges that, in her opinion, Beers was intoxicated. Defendant argues plaintiff failed to establish any basis for her opinion.

G.S. § 8C-1, Rule 701 provides that a non-expert may testify and provide opinions or inferences "which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701 (2001). "If based on first-hand knowledge and helpful to the jury, this rule permits lay opinions regarding a [person's] . . . intoxication . . . ." *State v. Dukes*, 110 N.C. App. 695, 706, 431 S.E.2d 209, 215-16 (1993) (citing *State v. Adkerson*, 90 N.C. App. 333, 368 S.E.2d 434 (1988)).

Sturges testified that she was present at defendant's restaurant from 11:30 p.m. until 2:00 a.m.; that she observed Beers during the

**MILLER v. B.H.B. ENTERS., INC.**

[152 N.C. App. 532 (2002)]

entire time she was there; that he was talking loudly, and acting boisterously and obnoxiously; and that, in her opinion, he was intoxicated. Her testimony was clearly based upon first-hand knowledge from personal observation. The testimony was also relevant and helpful to the jury since the issue of Beers' intoxication was an important issue of fact in light of plaintiff's contention that defendant continued to serve Beers alcohol after he had become intoxicated, and that defendant's manager then stood by and watched as Beers beat and kicked plaintiff after the manager had ejected plaintiff from the restaurant. This assignment of error is overruled.

II.

By separate assignments of error, defendant contends the trial court erred by denying its motions for directed verdict on the issues of punitive damages, negligence, and intervening criminal act of a third party. We will consider the arguments in the order in which they are presented in defendant's brief.

A motion for directed verdict "tests the legal sufficiency of the evidence, considered in the light most favorable to the nonmovant, to take the case to the jury." *Northern Nat'l Life Ins. v. Miller Machine Co.*, 311 N.C. 62, 69, 316 S.E.2d 256, 261 (1984). If the evidence is insufficient to support a verdict in the nonmovant's favor, the motion should be granted. *Stanfield v. Tilghman*, 342 N.C. 389, 464 S.E.2d 294 (1995). If the trial court finds there is more than a scintilla of evidence supporting plaintiff's claim, the motion for directed verdict should be denied. *Hutelmyer v. Cox*, 133 N.C. App. 364, 514 S.E.2d 554, *disc. review denied*, 351 N.C. 104, 541 S.E.2d 146 (1999). Only in exceptional cases is it appropriate to render a directed verdict against a plaintiff in a negligence claim. *Taylor v. Walker*, 320 N.C. 729, 360 S.E.2d 796 (1987). The sufficiency of the evidence to withstand a motion for directed verdict or judgment notwithstanding the verdict presents an issue of law. *In re Will of Buck*, 350 N.C. 621, 516 S.E.2d 858 (1999).

### A. Punitive Damages

[2] Defendant contends the trial court erred in failing to grant its motion for directed verdict as to punitive damages on two grounds: (1) there was insufficient evidence that defendant's employees acted willfully and wantonly because there was no evidence that the employees could have prevented plaintiff's injuries; and (2) there was no evidence that an officer, manager, or director of de-

fendant participated in or condoned Beers' actions. We address each argument in turn.

G.S. § 1D-15 provides:

(a) Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded:

(1) Fraud.

(2) Malice.

(3) Willful or wanton conduct.

(b) The claimant must prove the existence of an aggravating factor by clear and convincing evidence.

N.C. Gen. Stat. § 1D-15 (2002).

Defendant argues that plaintiff's position that its employees acted willfully and wantonly by failing to intercede must fail because there is no evidence that defendant's employees could have prevented plaintiff's injuries. However, in order to prove that conduct is willful or wanton within the meaning of G.S. § 1D-15, plaintiff need only show that defendant acted with "conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." N.C. Gen. Stat. § 1D-5(7).

Here, plaintiff presented Ms. Sturges' testimony that Bennett and two of defendant's bouncers who were working that evening witnessed the "brutal attack" on plaintiff. Ms. Sturges testified that Bennett and the bouncers were standing "right there" and were "very close" as Beers began hitting plaintiff, who then fell to the ground, and repeatedly kicked plaintiff. Ms. Sturges testified that despite defendant's employees having more than one opportunity to intervene and protect plaintiff, who was "not moving" and "looked like he was dead," from Beers' blows, Bennett and the bouncers simply watched.

Ms. Sturges' testimony was corroborated by Bennett's, who conceded that he and the two bouncers who escorted plaintiff from the bar witnessed the beating and were standing "right there" when Beers came out and began hitting plaintiff, who then fell to the ground.

Bennett testified that plaintiff was not able to protect himself after the first punch was thrown by Beers, and that Beers continued to kick plaintiff "[m]ore than once" while plaintiff was laying on the ground unable to help himself. Bennett admitted that neither he nor the bouncers did anything to help plaintiff, reasoning only that there was not enough time to do so. However, even under Bennett's estimation that one-half of a minute passed from the time Beers first punched plaintiff until he was finished with the beating, such evidence, considered under the standard for a directed verdict, is sufficient to support the trial court's denial of defendant's motion, particularly given the testimony that Bennett and the bouncers were standing "right there" and "very close" to plaintiff for the half-minute that he was being beaten.

Moreover, Bennett, as the bouncers' superior, had the authority to instruct them to intervene on plaintiff's behalf. Indeed, Bennett acknowledged that defendant employs bouncers to assist in dealing with people who "can't handle their alcohol;" because some patrons "get drunk and like to fight;" and because bouncers can "separate" drunk and belligerent patrons from others. Bennett's testimony establishes that part of the bouncers' duties as employees of defendant was to prevent fighting. Moreover, Bennett testified that the bouncers who witnessed plaintiff being beaten were "big dudes" who were so strong that plaintiff would not have been able to struggle while being escorted from the bar even if he had wanted to. Taken in the light most favorable to plaintiff, the evidence sufficiently established that defendant's employees acted with "conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." N.C. Gen. Stat. § 1D-5(7).

[3] We also reject defendant's argument that plaintiff failed to present sufficient evidence that an officer, director, or manager of defendant participated in or condoned the attack on plaintiff. Under G.S. § 1D-15(c), punitive damages may not be assessed against a corporation unless "the officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." N.C. Gen. Stat. § 1D-15(c). As the legislature has not seen fit to define the word "manager" in this context, we must accord that word its plain meaning. *See Grant Const. Co. v. McRae*, 146 N.C. App. 370, 376, 553 S.E.2d 89, 93 (2001) (if word not defined in statute, courts must accord word plain meaning and refrain from judicial construction). A "manager" is one

who "conducts, directs, or supervises something." *Webster's Third New International Dictionary* 1372 (1968). The record contains ample evidence that Bennett was a "manager" of defendant.

Bennett testified in his deposition that he was hired by defendant for the purpose of opening the restaurant at issue in Matthews, North Carolina. He stated that he was the one who "actually went in and opened up that whole establishment." He further stated that he worked "hand-in-hand" with Britton McCorkle, defendant's owner, to open up the restaurant in Matthews. McCorkle testified that he is one of three shareholders of defendant, but that he is the "operating partner" of the business. Bennett testified that he worked "directly under" McCorkle. Bennett stated that once he and McCorkle opened the restaurant, he assumed control of its daily operations, including all hiring and managing of the employees necessary to run the restaurant, all training (including the training of all managers and other "certified trainers" at the restaurant), and all of the ordering necessary to run the restaurant, including all food and service ware. Bennett had his own assistant to help him with running the restaurant, who performed such duties as conducting all first interviews with potential hires, with Bennett interviewing only those who had successful first interviews. Clearly, the evidence is sufficient to establish that Bennett handled, controlled, and directed defendant's operation of the restaurant.

Moreover, the evidence, taken in the light most favorable to plaintiff, was sufficient to show that Bennett condoned the attack on plaintiff. The plain meaning of "condone" is to "forgive or overlook," *The Oxford American Dictionary* 197 (1999), or "permit the continuance of." *Webster's Third New International Dictionary* 473 (1968). As set forth above, the evidence established that Bennett and two bouncers stood "right there" while plaintiff, who was rendered helpless after the first blow, was repeatedly kicked, and that Bennett failed to intervene himself or direct his employees to intervene, despite acknowledging that it was the bouncers' job to prevent fights involving drunk patrons. This assignment of error is overruled.

## B. Negligence

[4] In support of its contention that it was entitled to a directed verdict on the issue of negligence, defendant argues the evidence was not sufficient to show any breach of duty on its part in failing to protect plaintiff from the assault by a third party, Beers, or that

any measures which it could have taken would have prevented plaintiff's injury because the attack by Beers was not foreseeable. We disagree.

While a possessor of land is not ordinarily liable for injuries to lawful visitors to the premises which are caused by the intentional criminal acts of third persons, "a proprietor of a public business establishment has a duty to exercise *reasonable or ordinary care* to protect his patrons from intentional injuries by third persons, *if he has reason to know that such acts are likely to occur.*" *Murrow v. Daniels*, 321 N.C. 494, 500-01, 364 S.E.2d 392, 397 (1988) (emphasis supplied) (citing *Foster v. Winston-Salem Joint Venture*, 303 N.C. 636, 638-39, 281 S.E.2d 36, 38 (1981) *citing with approval* Restatement (Second) of Torts § 344 and comment f (1965) (other citation omitted). Therefore, whether a proprietor has a duty to safeguard his invitees from injuries caused by the criminal acts of third persons is a question of foreseeability. *Id.* "Liability for injuries may arise from failure of the proprietor to exercise reasonable care to discover that such acts by third persons are occurring, or are likely to occur, coupled with failure to provide reasonable means to protect his patrons from harm or give a warning adequate to enable patrons to avoid harm." *Id.* (citations omitted). Further, according to this Court, "evidence pertaining to the foreseeability of criminal attack shall not be limited to prior criminal acts occurring on the premises." *Sawyer v. Carter*, 71 N.C. App. 556, 561, 322 S.E.2d 813, 817 (1984), *disc. review denied*, 313 N.C. 509, 329 S.E.2d 393 (1985).

At trial, defendant attempted to characterize the attack upon plaintiff by Beers as a fight between two individuals. However, considered in the light most favorable to plaintiff, the evidence tended to show (1) plaintiff was intoxicated and falling down; (2) Jeff Beers, who was defendant's off-duty employee and known to defendant's manager and on-duty bouncers, was intoxicated and had been making fun of plaintiff; (3) as a result of plaintiff's conduct directed toward the female bartender, defendant's manager and two of the on-duty bouncers led plaintiff out the front door where plaintiff again fell; (4) plaintiff was left in a perilous position; (5) while the manager and two bouncers watched, Beers came outside and attacked plaintiff; and (6) neither the manager nor either of the bouncers offered any assistance to plaintiff or took any steps to stop the brutal attack. On this evidence, the jury could have reasonably found that it was foreseeable that Beers might assault and injure plaintiff if they left plaintiff outside the restaurant in a perilous position, or did not intervene to stop

the beating. The trial court properly denied defendant's motion for a directed verdict on the issue of negligence.

### C. Intervening Criminal Act of Third Party

[5] Defendant next contends that Beers' criminal activity was an intervening cause that relieved defendant from negligence by cutting off the proximate cause flowing from the acts of defendant's agents. We disagree.

With regard to the doctrine of superseding or intervening negligence, our Supreme Court has stated:

"An efficient intervening cause is a new proximate cause which breaks the connection with the original cause and becomes itself solely responsible for the result in question. It must be an independent force, entirely superseding the original action and rendering its effect in the causation remote."

*Hairston v. Alexander Tank & Equip. Co.*, 310 N.C. 227, 236, 311 S.E.2d 559, 566 (1984) (quoting *Harton v. Telephone Co.*, 141 N.C. 455, 462, 54 S.E. 299, 301-02 (1906)).

As explained above, defendant, through its manager, had a duty to exercise reasonable care to protect plaintiff from harm under the facts of this case. Defendant's manager placed plaintiff in a helpless state by removing him from the restaurant and leaving him outside with knowledge that Beers was angry at plaintiff's conduct with respect to the female bartender and that Beers, an off-duty bouncer at the restaurant, had been at the restaurant for several hours drinking alcohol. Once Beers began beating plaintiff, defendant's manager knew that physical harm was occurring and did nothing to interrupt, prevent, or intervene in the affray. Therefore, Beers' actions did not entirely supersede defendant's negligent conduct. This assignment of error is overruled.

### III.

[6] Defendant next contends the trial court erred by deviating from the pattern jury instructions and submitting prejudicial instructions to the jury. Specifically, defendant claims that the trial court's instructions to the jury "were prejudicial, contained misstatements of the law and placed an undue and unreasonable legal burden upon the defendant." We disagree.

When the evidence is reviewed in the light most favorable to plaintiff, sufficient evidence exists to show that defendant's agents

failed to exercise reasonable care to protect plaintiff from Beers. The jury could have found from the evidence that it was foreseeable that Beers would have attacked plaintiff, or that defendant's agents owed plaintiff a duty to rescue him after they had placed him in a helpless position. Defendant cites no authority or argument to support his proposition that the jury instructions were improper. We have reviewed the instructions, and discern no error. This assignment of error is overruled.

IV.

**[7]** Defendant finally argues the trial court erred by allowing plaintiff to amend his pleadings at the close of his evidence to include the defense of last clear chance where no evidence supported this assertion. Defendant argues that plaintiff "failed to present any evidence that he put himself in a position of peril or imminent harm."

There is substantial evidence that plaintiff was intoxicated, fell down at least three times, and had no recollection of the events that occurred outside the restaurant. Plaintiff moved to amend his pleadings to include the doctrine of last clear chance. Defendant objected. The trial court allowed the amendment to conform to the evidence presented at trial.

Rule 15(b) of the Rules of Civil Procedure provides in pertinent part that:

> Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, either before or after judgment . . . . If evidence is objected to at the trial on the ground that it is not within the issues raised by the pleadings, the court may allow the pleadings to be amended and shall do so freely when . . . the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits.

N.C. Gen. Stat. § 1A-1, Rule 15(b) (2001). "Liberal amendment of pleadings is encouraged by the Rules of Civil Procedure in order that decisions be had on the merits and not avoided on the basis of mere technicalities." *Phillips v. Phillips*, 46 N.C. App. 558, 560-61, 265 S.E.2d 441, 443 (1980) (citing *Mangum v. Surles*, 281 N.C. 91, 187 S.E.2d 697 (1972)); *see also Mauney v. Morris*, 316 N.C. 67, 340 S.E.2d 397 (1986).

**MILLER v. B.H.B. ENTERS., INC.**

[152 N.C. App. 532 (2002)]

The trial judge has broad discretion in ruling on motions to amend pleadings. *Auman v. Easter*, 36 N.C. App. 551, 244 S.E.2d 728, *disc. review denied*, 295 N.C. 548, 248 S.E.2d 725 (1978). "The objecting party has the burden of satisfying the trial court that he would be prejudiced by the granting or denial of a motion to amend. The exercise of the court's discretion is not reviewable absent a clear showing of abuse thereof." *Watson v. Watson*, 49 N.C. App. 58, 60-61, 270 S.E.2d 542, 544 (1980) (citations omitted). Defendant did not argue here or at trial that he was prejudiced by the trial court allowing amendment of the pleadings. We find that plaintiff produced sufficient evidence to support the doctrine of last clear chance. Defendant has failed to carry its burden of showing an abuse of discretion. This assignment of error is overruled.

The judgment of the trial court is affirmed.

Affirmed.

Judge THOMAS concurs.

Judge TYSON concurs in part and dissents in part.

TYSON, Judge, concurring in part and dissenting in part.

I concur with parts I, IIB, IIC, III, and IV of the majority's opinion. I respectfully dissent from part IIA for two reasons: (1) plaintiff presented no evidence that "the officers, directors, or managers" of B.H.B. Enterprises, Inc. participated in or condoned the battery committed against plaintiff or that (2) Radford Bennett, the manager of the restaurant, was an "officer, director, or manager" of B.H.B., Enterprises, Inc.

## I.  G.S. § 1D-15

The majority's opinion sets forth G.S. § 1D-15(a) and (b) in their entirety. However, that opinion fails to set out subsection (c) which provides as follows:

(c) Punitive damages shall not be awarded against a person solely on the basis of vicarious liability for the acts or omissions of another. Punitive damages may be awarded against a person only if that person participated in the conduct constituting the aggravating factor giving rise to the punitive damages, or if, in the case of a corporation, the officers, directors, or managers of the

corporation participated in or condoned the conduct constituting
the aggravating factor giving rise to punitive damages.

N.C. Gen. Stat. § 1D-15(c) (2001) (emphasis supplied).

The language of G.S. § 1D-15(c) is explicit and contextual. The
majority's opinion isolates the word "managers," removes it from its
contextual setting, and then defines the word "managers" using
Webster's Dictionary. This approach is inconsistent with established
canons of statutory construction. The majority's opinion states that
"courts must accord [a] word [its] plain meaning and refrain from
judicial construction." This is a standard rule of construction, but not
a complete statement of the rules.

"The words of a statute must be construed in accordance with
their ordinary and common meaning *unless they have acquired a
technical meaning or unless a definite meaning is apparent or
indicated by the context of the words." Raleigh Place Assoc. v. City
of Raleigh, Bd. of Adjustment*, 95 N.C. App. 217, 219, 382 S.E.2d 441,
442 (1989) (citing *State v. Lee*, 277 N.C. 242, 176 S.E.2d 772 (1970)
(emphasis supplied)). *See also Ace-Hi, Inc. v. Department of
Transp.*, 70 N.C. App. 214, 218, 319 S.E.2d 294, 297 (1984) (citing
*Lafayette Transp. Service, Inc. v. County of Robeson*, 283 N.C. 494,
196 S.E.2d 770 (1973)); *State v. Phipps*, 112 N.C. App. 626, 629, 436
S.E.2d 280, 281 (1993). "Words and phrases of a statute 'must be con-
strued as a part of the composite whole and accorded only that mean-
ing which other modifying provisions and the clear intent and pur-
pose of the act will permit.' " *Vogel v. Reed Supply Co.*, 277 N.C. 119,
131, 177 S.E.2d 273, 280 (1970) (quoting 7 Strong's N.C. Index 2d,
Statutes § 5; *State v. Spencer*, 276 N.C. 535, 173 S.E.2d 765 (1970)
(other citations omitted)). Where words have a known technical
meaning, that meaning must be adopted in construing a statute.
*Randall v. R.R.*, 104 N.C. 410, 413, 10 S.E. 691, 691 (1889). "A compli-
mentary rule of construction provides that when technical terms or
terms of art are used in a statute, they are presumed to be used with
their technical meaning in mind, likewise absent legislative intent to
the contrary." *Dare County Bd. of Educ. v. Sakaria*, 127 N.C. App.
585, 588, 492 S.E.2d 369, 371-72 (1997) (citing *Black v. Littlejohn*, 312
N.C. 626, 639, 325 S.E.2d 469, 478 (1985)).

"Under the principle of *ejusdem generis*, when a general term
follows a specific one, the general term should be understood as a
reference to subjects akin to the one with specific enumeration."
*Norfolk and Western R. Co. v. Train Dispatchers*, 499 U.S. 117, 129,

113 L. Ed. 2d 95, 107 (1991). "The maxim *ejusdem generis* applies especially to the construction of legislative enactments. It is founded upon the obvious reason that if the legislative body had intended the general words to be used in their unrestricted sense the specific words would have been omitted." *Meyer v. Walls*, 347 N.C. 97, 106, 489 S.E.2d 880, 885 (1997) (quotation omitted).

Here, the word "managers" has (1) a limited range of meanings utilizing the principle of *ejusdem generis*, (2) a technical meaning, and (3) a meaning apparent and indicated within the context of G.S. § 1D-15(c). To define the word "managers" with one of its dictionary definitions broadens its scope of possible meanings beyond permissible boundaries as set forth in the statute.

The legislature placed the word "managers" directly after the words "officers" and "directors." The word "managers" should be understood as a reference to subjects akin to "officers" and "directors." A restaurant "manager" is not akin to an "officer" or "director" of a corporation. A restaurant manager oversees a physical location; a director or officer directs or supervises a corporation.

The word "managers" is also defined with a technical meaning in other portions of the North Carolina General Statutes. Corporations are owned by shareholders and managed by "directors" and "officers." *See* North Carolina Business Corporation Act in Chapter 55 of the North Carolina General Statutes. Limited liability companies are owned by "members" and managed by "managers." *See* North Carolina Limited Liability Company Act in Chapter 57C of the North Carolina General Statutes. N.C. Gen. Stat. § 57C-3-22 expressly defines the "Duties of managers." The term "managers," as technically defined in G.S. § 57C-3-22 does not resemble the dictionary definition that the majority ascribes to the word "managers." In this context, the word "managers" is synonymous with the words "directors" and "officers" in the business entity setting.

The meaning of the word "managers" is also apparent and indicated by the context in which it is used in G.S. 1D-15(c). Sentence number two of G.S. § 1D-15(c) must be read in the context of sentence one. The first sentence of G.S. § 1D-15(c) states that "Punitive damages shall not be awarded against a person solely on the basis of vicarious liability . . . ." N.C. Gen. Stat. § 1D-15(c). Restaurant managers are not "officers, directors or managers" of a corporation; they are employees of the corporation. The doctrine of *respondeat superior* provides that "the torts of an employee that occur in the course

**MILLER v. B.H.B. ENTERS., INC.**

[152 N.C. App. 532 (2002)]

of employment are imputed to the employer." David A. Logan & Wayne A. Logan, *North Carolina Torts*, § 10.30 at 233 (1996). The doctrine allows for vicarious liability.

Here, all of the corporate defendant's liability is vicarious. Radford Bennett is an employee of the corporate defendant. B.H.B. Enterprises, Inc., defendant, is owned by Britton McCorkle ("McCorkle"). There is no evidence in the record that McCorkle was present at the restaurant on the evening of the incident. There is also no evidence that Bennett is an owner of B.H.B. Enterprises, Inc. All liability sustained by defendant was acquired through the actions of defendant's employees. This is a classic example of vicarious liability. To ascribe to the majority's definition of the word "managers" obliterates the meaning of the first sentence of G.S. § 1D-15(c).

Plaintiff presented no evidence that McCorkle, or any other "director, officer, or manager of the corporation participated in or condoned the conduct constituting the aggravating factor," or ordered, or ratified outrageous conduct on the part of any of the corporation's employees.

The majority's expansion of the meaning of "managers" beyond its statutory context violates long established rules of statutory construction. "I thought we had adopted a regular method for interpreting the meaning of language in a statute: first, find the ordinary meaning of the language in its textual context; and second, using established canons of construction, ask whether there is any clear indication that some permissible meaning other than the ordinary one applies." *Chisom v. Roemer*, 501 U.S. 380, 404, 115 L. Ed. 2d 351, 369 (1991) (Scalia, J. dissenting) (citations omitted). "Today, however, the Court adopts a method quite out of accord with that usual practice. It begins not with what the statute says, but with an expectation about what the statute must mean . . . . As method, this is just backwards, and however much we may be attracted by the result it produces in a particular case, we should in every case resist it." *Id.* at 405, 115 L. Ed. 2d at 369.

## II. Corporate Complicity

North Carolina's statute is neither unique nor dissimilar to other states. G.S. § 1D-15(c) is a codification of what other states term the "corporate complicity" rule, which requires express and explicit condoning of the act by a corporate defendant in order to be vicariously liable for punitive damages.

Other jurisdictions have enacted similar statutes limiting punitive damages for vicarious liability. While no other state has an identical provision, some other statutes are illustrative of the limiting purposes behind our N.C. Gen. Stat. § 1D-15(c).

Kansas has adopted a statute similar to North Carolina. In K.S.A. § 60-3701(d), the legislature provided that: "In no case shall exemplary or punitive damages be assessed pursuant to this section against: (1) a principal or employer for the acts of an agent or employee unless the questioned conduct was authorized or ratified by a person expressly empowered to do so on behalf of the principal or employer." K.S.A. § 60-3701(d). "K.S.A. § 60-3701(d)(1) limits punitive damages assessed to an employer only in circumstances where the employer has ratified or authorized the act of the employee . . . . [T]he policy of Kansas regarding assessment of punitive damages against a corporation is that such damages may be assessed in accord with the complicity rule but not upon a vicarious liability rule." *Hartford Accident & Indem. Co. v. American Red Ball Transit Co., Inc.*, 938 P.2d 1281, 1292 (Kan. 1997).

In Illinois, "[t]he corporate-complicity rule allows for the imposition of punitive damages against a corporation *if a superior officer* of the corporation ordered, participated in, or ratified outrageous conduct on the part of an employee." *Hargan v. Southwestern Elec. Co-op., Inc.*, 725 N.E.2d 807, 810-11 (Ill. App. 2000) (citing *Kemner v. Monsanto Co.*, 576 N.E.2d 1146, 1157 (1991) (emphasis supplied)).

The State of Idaho also follows the corporate complicity rule. "A corporation is liable for punitive damages based upon the acts of its agents *if the directors and managing officers* participated in, or authorized or ratified, the agents' acts." *Student Loan Fund of Idaho, Inc. v. Duerner*, 951 P.2d 1272, 1280 (Idaho. 1997) (emphasis supplied).

In North Carolina the General Assembly has spoken. G.S. § 1D-15(c) is clear and explicit. I concur with the majority's holding that defendant is vicariously liable in negligence for the actions of its employees. However, in the total absence of any evidence that "officers, directors, or managers of [defendant] corporation participated in or condoned the conduct . . . ," I respectfully dissent from that portion of the majority's opinion that affirms the trial court's award of punitive damages against the corporate defendant based solely on vicarious liability. I would vacate that portion of the judgment awarding plaintiff punitive damages. I respectfully dissent.