STEVEN LEE WALLACE, Plaintiff-Appellee v. M, M & R, INC., individually; M, M & R, INC., d/b/a THE SPORTS PAD COMPLEX; ADAM THOMAS REDFIELD, JON RYAN WHALEY, and ROGER DALE SOUTHARD, JR., Defendants-Appellants

No. COA03-845

(Filed 17 August 2004)

**1. Premises Liability— failure to provide safe and secure premises—negligent hiring and training—bouncers**

The trial court did not err in an acting for damages arising out of the failure to provide safe and secure premises and negligent hiring and training of security staff at a nightclub by denying defendants' motions for directed verdict and motion for judgment notwithstanding the verdict, because a jury could reasonably find that defendants' bouncers were acting within the scope of their employment at the time of the pertinent incident when: (1) an organized plan was developed for the bouncers to approach plaintiff and his friend for the purported purpose of removing them from the premises; (2) the police had been notified but instead of waiting for their arrival, the manager and bouncers decided to approach plaintiff and his friend which was an action

taken as a group decision in consultation with the manager in compliance with the job description of a bouncer at a bar; and (3) the bouncers' action, though guised as an opportunity to remove plaintiff and his friend, quickly turned into a beating and this action was performed with negligent or improper method opening defendants to liability.

## 2. Damages and Remedies— punitive damages—motion for judgment notwithstanding verdict—manager participation

The trial court did not err in an acting for damages arising out of the failure to provide safe and secure premises and negligent hiring and training of security staff at a nightclub by denying defendants' motion for judgment notwithstanding the verdict as to punitive damages based on alleged insufficient evidence that the nightclub's manager participated in or condoned the attack on plaintiff within the meaning of N.C.G.S. § 1D-15(c) because by his own testimony, the manager failed to intervene in the beating of plaintiff when he did not ask the bouncers to stop or attempt to break up the attack on plaintiff in any way.

## 3. Emotional Distress— negligent infliction—directed verdict

Although defendants contend plaintiff's claim for negligent infliction of emotional distress cannot be sustained, the record shows the trial court granted a directed verdict as to plaintiff's negligent infliction of emotional distress claim as to all defendants.

Appeal by defendants M, M & R, Inc., individually, and M, M & R, Inc., d/b/a The Sports Pad Complex, from an order entered 25 September 2002 and from judgment entered 26 November 2002 by Judge Clifton W. Everett, Jr. in Superior Court, Pitt County. Heard in the Court of Appeals 1 April 2004.

*Law Offices of Frank A. Cassiano, Jr., by Frank A. Cassiano, Jr., for plaintiff-appellee.*

*The Robinson Law firm, by Leslie S. Robinson, for defendants-appellants.*

McGEE, Judge.

Steven Lee Wallace (plaintiff) filed a complaint on 19 September 2000 against M, M & R, Inc., individually; M, M, & R, Inc., d/b/a The Sports Pad Complex; Joseph Mark Saieed (Saieed), Adam Thomas

Redfield (Redfield), Jon Ryan Whaley (Whaley), and Roger Dale Southard, Jr. (Southard), alleging that M, M & R, Inc., individually, and M, M & R, Inc., d/b/a The Sports Pad Complex (defendants) failed to provide safe and secure premises and that defendants negligently hired and trained their security staff. Defendants filed an answer on 23 October 2000. At trial, a jury determined defendants were liable to plaintiff in the amount of $35,000 for compensatory damages and $210,000 for punitive damages. Defendants moved for judgment notwithstanding the verdict on 7 June 2002. The trial court denied defendants' motion on 25 September 2002. Defendants M, M & R, Inc., individually, and M, M & R, Inc., d/b/a The Sports Pad Complex, appeal.

The evidence at trial tended to show that plaintiff was injured on the evening of 5 February 2000 while he was a patron at a nightclub owned and operated by defendants. Plaintiff and Danny Elwell (Elwell) were sitting at the nightclub's bar when they saw Whaley, one of defendants' employees, who was working that evening as a bouncer. Whaley had been struck on the head with a beer bottle at the nightclub a week earlier. January Wright (Wright), the bartender on duty on the evening of 5 February, told Whaley she heard plaintiff and Elwell discussing the earlier assault. Whaley radioed Southard, the operations manager for the Sports Pad, and told him that the people who had assaulted him were reportedly in the nightclub. Southard sent Whaley to take a closer look to try to determine if plaintiff and Elwell were the individuals who had assaulted Whaley. Whaley was unsure whether plaintiff and Elwell were the assailants, so Southard sent other employees who had been present on the night of the assault to attempt to determine whether plaintiff and Elwell were the parties responsible for the assault. Two employees told Southard they believed that plaintiff and Elwell had committed the attack on Whaley. Plaintiff testified that he was not at the nightclub the night Whaley was assaulted.

Southard decided that plaintiff and Elwell should be removed from the nightclub. Southard gathered several on-duty employees to inform them of his plan. Whaley testified that Southard asked Redfield, an employee who was allegedly off duty that night, to assist in removing plaintiff and Elwell from the nightclub. Southard and the employees divided into two groups of three bouncers each and approached plaintiff and Elwell at the bar. They formed a semi-circle around plaintiff and Elwell, told plaintiff and Elwell to leave the premises, and took away their drinks. As plaintiff and Elwell rose to

leave, Redfield punched plaintiff in the head. Whaley then struck plaintiff's head on the other side. Plaintiff fell to the floor and was punched and kicked repeatedly by Redfield, Whaley, and the other on-duty bouncers. Whaley stomped on plaintiff's head while plaintiff was on the floor. As plaintiff was being beaten, two bouncers dragged Elwell outside. Southard testified that no one made an effort to restrain Redfield, the off-duty employee, from participating in the attack. As a result of the beating, plaintiff was rendered "unconscious and unresponsive[.]" Furthermore, plaintiff was bleeding from his right ear, was having trouble breathing, and sounded as if he was aspirating. After the beating, the bouncers then allegedly slapped plaintiff's face while they dragged plaintiff's unconscious body across the floor.

The police arrived shortly after the beating ended. Plaintiff was taken to the hospital where he remained until 10 February 2000. Plaintiff suffered some hearing loss, as well as vertigo, extreme panic attacks, and anxiety.

Prior to the events of 5 February 2000, testimony indicated that Saieed, defendants' president and operator, was aware that Whaley had a past history of violence against bar patrons. In fact, Whaley had been dismissed once due to an incident involving excessive force but was subsequently rehired. Southard also testified that he was aware that Redfield had used excessive force against a bar patron in the past.

[1] Defendants argue that the trial court erred by denying defendants' motions for directed verdict and defendants' motion for judgment notwithstanding the verdict. For the reasons below, we disagree. "The test for determining whether a motion for directed verdict is supported by the evidence is identical to that applied when ruling on a motion for judgment notwithstanding the verdict." *Martishius v. Carolco Studios, Inc.*, 355 N.C. 465, 473, 562 S.E.2d 887, 892 (2002). "[T]he trial court must consider the evidence in the light most favorable to the nonmoving party, giving [the nonmoving party] the benefit of all reasonable inferences to be drawn therefrom and resolving all conflicts in the evidence in [the nonmoving party's] favor." *Id.* (quoting *Taylor v. Walker*, 320 N.C. 729, 733-34, 360 S.E.2d 796, 799 (1987)). A motion should be granted only when the evidence is insufficient to support a verdict in the nonmoving party's favor. *Dockery v. Hocutt*, 357 N.C. 210, 217, 581 S.E.2d 431, 436 (2003). A motion for directed verdict or judgment notwithstanding the verdict should be denied if the trial court finds there is "more than a scintilla of evidence sup-

porting each element of the plaintiff's claim[.]" *Hutelmyer v. Cox*, 133 N.C. App. 364, 369, 514 S.E.2d 554, 558, *disc. review denied*, 351 N.C. 104, 541 S.E.2d 146 (1999).

"When there is a dispute as to what the employee was actually doing at the time the tort was committed, all doubt must be resolved in favor of liability and the facts must be determined by the jury." *Edwards v. Akion*, 52 N.C. App. 688, 698, 279 S.E.2d 894, 900, *aff'd*, 304 N.C. 585, 284 S.E.2d 518 (1981). Furthermore, "[w]here the employee's actions conceivably are within the scope of employment and in furtherance of the employer's business, the question is one for the jury." *Medlin v. Bass*, 327 N.C. 587, 593, 398 S.E.2d 460, 463 (1990).

On the issue of vicarious liability for the act of an employee, our Supreme Court has stated:

> If the servant was engaged in performing the duties of his employment at the time he did the wrongful act which caused the injury, the employer is not absolved from liability by reason of the fact that the employee was also motivated by malice or ill will toward the person injured, or even by the fact that the employer had expressly forbidden him to commit such act.

*Wegner v. Delicatessen*, 270 N.C. 62, 66, 153 S.E.2d 804, 807-08 (1967). In *Wegner*, an employee at the defendant's restaurant slammed a glass down on the plaintiff's table. The plaintiff told the employee that he did not think his actions were "too funny." *Id.* at 64, 153 S.E.2d at 806. The employee left and immediately returned to the plaintiff's table and threatened to cut the plaintiff's eyes out with a fork. As the plaintiff attempted to leave the restaurant, the employee, who had been restrained by a fellow employee, broke away and struck the plaintiff. *Id.* Our Supreme Court held that, "[w]hatever the source of his animosity toward the plaintiff may have been, he did not strike the plaintiff as a means or method of performing his duties as [an employee]." *Id.* at 68, 153 S.E.2d at 809. However, our Supreme Court also noted a different situation would have arisen had the glass that the employee smashed on the plaintiff's table broken and injured the plaintiff. In such a case, "the employee would have been performing an act which he was employed to do and his negligent or improper method of doing it would have been the act of his employer in the contemplation of the law." *Id.*

The facts of the present case align analogously with our Supreme Court's hypothetical scenario. In the case before our Court, the facts

indicate that a jury could reasonably find that the bouncers were acting within the scope of their employment at the time of the incident. Southard, the operations manager, first sent Whaley, and then two more employees, to check on plaintiff and Elwell. When the employees expressed some assurance that plaintiff and Elwell were the patrons who had attacked Whaley, Southard rounded up the bouncers. An organized plan was developed. Two flanks of three bouncers each approached plaintiff and Elwell with the purported purpose of removing them from the premises. The police had been notified, but instead of awaiting their arrival, Southard and the bouncers decided to approach plaintiff and Elwell. Such an action, taken as a group decision in consultation with Southard, the manager, is in compliance with the job description of a bouncer at a bar. Such an action is, as *Wegner* instructs, "performing an act which [an employee] was employed to do[.]" *Id.* The bouncers' action, though guised as an opportunity to remove plaintiff and Elwell, quickly turned into a beating. That this action was performed with "negligent or improper method" opens defendants to liability. Once Redfield struck plaintiff and the beating commenced, Southard made no effort to restrain the bouncers. "Acting within the scope of employment means doing what one was employed or authorized to do." *Edwards*, 52 N.C. App. at 693, 279 S.E.2d at 897. Therefore, there was sufficient evidence by which a jury could conclude that plaintiff was injured while defendants' employees were acting within the scope of their duties. Defendants' argument is without merit.

**[2]** Defendants next argue that the trial court erred by failing to allow the motion for judgment notwithstanding the verdict as to punitive damages. This Court has said:

> Under G.S. § 1D-15(c), punitive damages may not be assessed against a corporation unless "the officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." N.C. Gen. Stat. § 1D-15(c). As the legislature has not seen fit to define the word "manager" in this context, we must accord that word its plain meaning. *See Grant Const. Co. v. McRae*, 146 N.C. App. 370, 376, 553 S.E.2d 89, 93 (2001) (if word not defined in statute, courts must accord word plain meaning and refrain from judicial construction). A "manager" is one who "conducts, directs, or supervises something." *Webster's Third New International Dictionary* 1372 (1968).

*Miller v. B.H.B. Enters., Inc.*, 152 N.C. App. 532, 539-40, 568 S.E.2d 219, 225 (2002). In *Miller*, we considered whether the plaintiff failed to present sufficient evidence that an officer, director, or manager of the defendant participated in or condoned the attack on the plaintiff within the meaning of N.C.G.S. § 1D-15(c). We found that the manager of the defendant's restaurant was a "manager" within the meaning of N.C.G.S. § 1D-15(c). In *Miller*, the restaurant manager had supervisory powers, including the power to hire and fire employees. The manager also worked "directly under" and "hand-in-hand" with the owner of the defendant's restaurant. *Miller*, 152 N.C. App. at 540, 568 S.E.2d at 225.

We find *Miller* to be instructive in its interpretation of N.C.G.S. § 1D-15. Thus, we find the record in the present case contains sufficient evidence that indicates that Southard was a "manager" of defendants. Southard was operations manager of defendants on 5 February 2000. He was the most senior employee on duty at the time the incident occurred. At trial, Southard testified that as operations manager, he "gave directions." He further noted that, "[he] dispense[d] the liquor [and] [he] dispose[d] [of] the money." Southard set the work schedules for the bouncers and supervised them when they arrived for work. He employed supervisory power over the bartenders by assuring they "got to the proper place" and he also "gave them the money they needed." Southard also offered input as to whether employees should be hired or fired, and he engaged in periodic meetings to discuss personnel.

Moreover, we considered in *Miller* whether the manager "condoned" the attack on a patron of the defendant's restaurant for the basis of finding punitive damages. *Id.* "The plain meaning of 'condone' is to 'forgive or overlook,' *The Oxford American Dictionary* 197 (1999), or 'permit the continuance of.' *Webster's Third New International Dictionary* 473 (1968)." *Miller*, 152 N.C. App. at 540, 568 S.E.2d at 225. In *Miller*, the evidence indicated that the manager failed to intervene and failed to direct his employees to intervene in a situation where the plaintiff was struck and repeatedly kicked by employees of the defendant. The manager stood "right there" as the plaintiff was beaten. *Id.* We concluded that there was sufficient evidence to show that the manager condoned this attack on the plaintiff within the plain meaning of N.C.G.S. § 1D-15.

In the present case, we find the evidence, taken in the light most favorable to plaintiff, was sufficient to show that Southard condoned the attack on plaintiff. When Southard was notified that plaintiff and

Elwell were in the bar, he sent Whaley and two other employees to see if plaintiff and Elwell were the assailants. After several minutes, Southard then gathered his staff of bouncers. They went over to plaintiff and Elwell in two groups and formed a semi-circle around plaintiff and Elwell. Whaley testified that Southard also asked Redfield to assist in removing plaintiff and Elwell. By his own testimony, Southard failed to intervene in the beating of plaintiff. He did not ask the bouncers to stop or attempt to break up the attack on plaintiff in any way. We find defendants' argument to be without merit.

[3] Defendants finally argue that plaintiff's claim for negligent infliction of emotional distress cannot be sustained; however, the record shows that the trial court granted a directed verdict as to plaintiff's negligent infliction of emotional distress claim as to all defendants. Defendants' argument is thus without merit.

N.C.R. App. P. 28(b)(6) provides that "[a]ssignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned." Accordingly, defendants' remaining assignments of error are deemed abandoned.

No error.

Judges CALABRIA and STEELMAN concur.